UNITED STATES of America,

v.

**Francois HOLLOWAY, also known as "Abdu Ali," Defendant.**

No. 95–CR–0078 (JG).

United States District Court, E.D. New York.

April 5, 1996.

Zachary W. Carter, United States Attorney by Dolan L. Garrett, Assistant U.S. Attorney, Brooklyn, New York, for U.S.

Dana Hanna, Brooklyn, New York, for Defendant.

*MEMORANDUM AND ORDER*

GLEESON, District Judge:

Defendant Francois Holloway, also known as "Abdu Ali," was indicted on February 2, 1995. He was charged with conspiring to operate a "chop shop," in violation of 18 U.S.C. § 371, operating a chop shop, in violation of 18 U.S.C. § 2322, three counts of carjacking, in violation of 18 U.S.C. § 2119,

and three counts of using and carrying a firearm during and in relation to the charged carjackings, in violation of 18 U.S.C. § 924(c). A jury trial was held in December 1995, after which Ali was found guilty of all charges.

Ali now moves for a new trial pursuant to Fed.R.Civ.P. 33, claiming that such relief is required in the interest of justice. In the alternative, he seeks reconsideration of his unsuccessful motion pursuant to Fed.R.Cr.P. 29, which he made at trial. The issue raised by the motion was also the central issue at the trial: what must the government prove to satisfy the intent element of the carjacking statute, 18 U.S.C. § 2119? [1]

There is no question that the conduct at issue in this case is precisely what Congress and the general public would describe as carjacking, and that Congress intended to prohibit it in § 2119. However, carelessness in the legislative process has produced a criminal statute that says something fundamentally different than what Congress obviously meant to say. As a result, Ali advances a colorable claim that his conduct here—using a gun to terrorize motorists into giving up their cars—is no longer prohibited by the carjacking statute. Indeed, it is likely that a 1994 amendment to the statute, which was explicitly intended to broaden the available penalties, in fact placed a large number of "carjackers" beyond its reach.

Ali, however, is not among them. Though colorable, his argument fails for the reasons set forth below, and his motion is denied.

## A. The Facts

Vernon Lennon's father, Teddy Arnold, operated a "chop shop" in Queens, New York. Lennon stole cars for his father to chop. His father would tell him what year and model cars he needed, and Lennon would locate such cars and steal them. He did not know how to disable alarms or "hot wire" cars, so Lennon's *modus operandi* was to take the cars from their owners at gunpoint. Lennon was a team player, always taking another robber with him to help locate the target car

and steal it. Since Lennon liked to follow a targeted car, often to the driver's home, before committing the robbery, a teammate was a virtual necessity; if the robbery was successful, there were two cars that had to be driven away.

Lennon has known the defendant Ali (whom Lennon knows as Francois Holloway) since they were boys. In approximately September 1994, he recruited Ali, who would hang around the chop shop, to steal cars with him. Lennon told Ali that Lennon would use a gun to steal the cars, and showed him the gun, a .32 caliber revolver. Ali agreed to help for a fixed fee per car stolen.

On October 14, 1994, Lennon and Ali stole a 1992 Nissan Maxima. They followed the car to the home of its driver, 69 year-old Stanley Metzger, in Queens. As Metzger got out of his car, Lennon and Ali got out of theirs. Lennon approached Metzger, pointed the gun at him, and demanded the keys. Metzger was apparently not fast enough in complying, so Lennon threatened to shoot him. Metzger handed over the keys, and was then told to hand over his wallet. He did so, and the robbers drove off with his car and his money.

On the next day, October 15, 1994, at approximately 8:00 p.m., Lennon and Ali spotted Donna DiFranco driving a 1991 Toyota Celica at the Whitestone Shopping Center in Queens. They followed her to her friend's house, and Lennon approached her after she exited her parked car. He pointed a gun at her and demanded her money and her car keys. She complied, and after some fumbling with the car alarm and an anti-theft device, Lennon and Ali took her car.

At approximately 10:00 p.m. on the same day, Lennon and Ali stole another car, a 1988 Mercedes Benz. They followed the victim, Ruben Rodriguez, to his home in the Jamaica Estates section of Queens. Both robbers got out of their car and approached Rodriguez, who had just stepped out of the Mercedes Benz. Lennon asked Rodriguez if he knew

1. Although Ali's motion purports to address all of the charges against him, none of his arguments addresses Counts One or Two (conspiracy to operate a chop shop and operation of a chop shop, respectively). Even if the challenges raised on this motion had merit, there would be no reason to set aside the jury's verdicts on those counts.

the location of a particular address. The address was, as Rodriguez put it, "way off base," and he knew "something was up." Rodriguez got back into his car and closed the door. Lennon pulled the gun and told him to get out of the car or he would be shot. Rodriguez got out of his car, and Lennon demanded his money as well as the keys. Rodriguez hesitated; his money was in a clutch bag on the passenger's seat, and he felt he might be killed if he leaned into the car to get it. Frustrated by the delay, the defendant Ali punched Rodriguez in the face. Rodriguez reeled backwards from the punch and used that momentum to begin running away from the robbers, who fled with his car and his money.

On all three occasions,[2] Lennon and Ali intended to leave the victims unharmed. Lennon never fired the gun in any of the carjackings. An experienced criminal, he knew that if he did, he risked a lengthier prison term than he would receive for simply robbing the car. For each robbery, the plan was to use the firearm only to obtain possession of the car, not to shoot or otherwise harm the victim.

However, in all three of the charged carjackings, Lennon was prepared to shoot the victims if their resistance made that necessary. In other words, he intended to kill or seriously injure the victims, but that intent was conditioned on their giving the robbers "a hard time." There was ample evidence from which a rational juror could infer that the defendant Ali shared that conditional intent.

## B. *The Carjacking Statute And Its 1994 Amendment*

In September 1992, Paula Basu, a Maryland woman, had her car stolen from her by two men. The men forced her from her car and drove off. Because her infant daughter was in the car, Basu clung to it as the men drove away, and was dragged to her death.

This horrific offense generated a public outcry, and focused attention on legislative efforts to make car robberies a federal crime.

Those efforts resulted in the Anti Car Theft Act of 1992, codified at 18 U.S.C. § 2119. As initially enacted, this new federal offense read as follows:

> Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
>
> (1) be fined under this title or imprisoned not more than 15 years, or both,
>
> (2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and
>
> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

The subsections of the statute obviously related solely to punishment, and were not elements of the offense. They provided for enhanced penalties of up to 25 years if serious bodily injury resulted from the offense, and up to life in prison if it resulted in death.

During 1993, Congress was considering extensive new criminal legislation, which included an array of new death penalties. Members of both houses proposed amendments to the newly-minted carjacking statute. The Senate bill proposed an amendment that would provide for the death penalty in cases where a carjacking results in death. S. 942, 103d Cong., 1st Sess. (1993). Senator Lieberman proposed a further amendment to this death penalty provision that would eliminate the requirement that such cases involve the use a firearm by the carjacker. In his remarks in support of his proposed amendment, Senator Lieberman observed:

> If a carjacking occurs and a death occurs as a result of that, does it really matter whether a firearm was used, whether a knife was used, whether physical force was used, or whether a mother, as in the Basu case, was dragged to her death because

---

**2.** There was also evidence of two uncharged crimes committed by Ali with Lennon: one other successful carjacking and an attempted one that

was aborted by the arrival of a police officer on the scene.

she wanted to make every effort to save the life of her child?

.    .    .    .    .

In this case, the very bill I am amending has the death penalty for carjacking. All I am doing here is taking a small but I think significant additional step in saying, if the death penalty is going to be enacted into law for cases of carjacking where death occurs, then we ought not to require that that death has to involve a firearm. If the person in a carjacking is killed as a result of a knife or other weapon or just as a result of the carjacking, then the criminal ought to be subject to death himself. That is why I propose the amendment.

139 Cong.Rec. S15295, S15301, S15303 (1993) (statement of Sen. Lieberman).

Thus, with respect to carjackings resulting in death, the Senate bill eliminated the firearm requirement and provided for the death penalty. Because such a statute could authorize the death penalty for an accomplice who neither killed a victim nor intended to kill or harm the victim, it would have been subject to attack under the Eighth Amendment. *See Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Perhaps for that reason, the conference report for the bill modified the Senate death penalty amendment for carjacking by adding an intent requirement—the "intent to cause death or serious bodily harm." H.R.Rep. No. 103–694, 103d Cong., 2d Sess. (1994), U.S.Code Cong. & Admin.News 1994, p. 1801.

These combined efforts resulted in the following provision of the Violent Crime Control and Law Enforcement Act of 1994:

(14) CARJACKING—Section 2119(3) of title 18, United States Code, is amended by striking the period after "both" and inserting ", or sentenced to death."; and by striking ", possessing a firearm as defined in section 921 of this title," and inserting ", with the intent to cause death or serious bodily harm."

Violent Crime Control and Law Enforcement Act of 1994 (the "Act"), Pub.L. No. 103–322, Title VI, § 60003(a)(14), 108 Stat. 1796, 1970 (1994). The provision was intended to affect only carjackings resulting in death. That was the sole focus of the legislative debates. Moreover, the provision was included in Title VI of the Act, which was entitled the "Federal Death Penalty Act of 1994." The most powerful evidence of the limited purpose of the amendment is Congress' obvious belief that it was amending only a penalty enhancement provision, not the statutory prohibition itself. Specifically, it purported to amend "§ 2119(3)," the subsection of the original (and existing) statute that is solely a penalty provision. Indeed, it is the penalty provision applicable to cases in which death results, which cases were, as noted, the only focus of the legislature's attention.

However, the possession-of-a-firearm requirement that the amendment eliminated was not, as the amendment mistakenly assumed, located in 2119(3). In fact, it was not in any of the three penalty provisions; rather, it was an element of the offense itself, a necessary ingredient of all carjacking prosecutions, not just those resulting in death. Thus, in its effort to eliminate the firearm requirement only in cases resulting in death, Congress enacted an amendment that, on its face, eliminates it in all cases.[3]

Similarly, Congress intended to add a new intent element for cases in which the death penalty is sought. However, notwithstanding the amendment's stated intention to affect only the penalty provisions of § 2119(3), it added the new element—"the intent to cause death or serious bodily harm"—to the first clause of § 2119, and thus made it applicable to all violations of the statute.

As amended, the statute now reads as follows:

Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or re-

---

**3.** It has been suggested that, notwithstanding the unequivocal language of the amended statute, the firearm requirement has only been eliminated when the carjacking results in death, and still must be proved in cases, like this one, that fall within § 2119(a) or (b). M. Michenfelder, *The*

*Federal Carjacking Statute: To Be Or Not To Be? An Analysis Of The Propriety Of 18 U.S.C. § 2119,* 39 St. Louis U.L.J. 1009 (1995). Perhaps because a firearm was used in this case, however, that strained argument has not been made here, and thus its merits need not be addressed.

ceived in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

In short, the 1994 amendment to the car-jacking statute effected fundamental changes that Congress never intended. The elimination of the firearm requirement for all cases federalized approximately 14,000 additional cases each year.[4] At the same time that it inadvertently opened the door for all these cases, Congress inadvertently closed it substantially by unintentionally imposing the specific intent requirement on the entire statute, not just in death penalty cases.[5]

### C. *Discussion*

■ Ali urges a literal construction of the amended statute, contending that it prohibits only those carjackings in which the perpetrators unconditionally intend to kill or seriously injure their victims. Under this reading, the law would not prohibit the crimes committed by Ali and Lennon, where the intent of the carjackers was not to kill or injure people, but to get cars. Indeed, this reading would no doubt insulate from federal prosecution the large majority of carjackings, as carjackers generally do not intend to cause death or serious bodily injury, but in fact hope that the opposite will occur, *i.e.*, that the victim will peaceably give up the car and suffer no harm at all.

Thus, if accepted, Ali's construction of the carjacking statute would drastically narrow its scope. Only those carjackers who intend not only to rob cars, but also to murder or seriously injure another, could be prosecuted. A person who intends to find a Mercedes Benz, shoot the owner and take the car could be prosecuted. A person who intends to find a Mercedes Benz and shoot the owner only if she refuses to give up her car could not, at least if the plan succeeds and the car is taken without the need to fire.

This would be an odd result. The statute would no longer prohibit the very crime it was enacted to address except in those unusual circumstances when carjackers also intended to commit another crime—murder or a serious assault. Moreover, this result, if accepted, would be the ironic product of legislation that was intended "to broaden and strengthen [the carjacking statute] so our U.S. attorneys (sic) have every possible tool available to them to attack the problem." 139 Cong.Rec. S15295, S15301 (1993) (statement of Sen. Lieberman).

Ali's argument fails because his intent to aid and abet Lennon's use of the firearm if the victims resisted is sufficient. Where a crime is defined to require a particular intention, that element is satisfied even if the requisite intent is conditional, unless the condition negatives the evil sought to be prevented by the statute. W.R. Lafave and A.W. Scott, Jr., *Handbook on Criminal Law*, § 28 at 200 (1972).

Although the issue of conditional intent is not raised very often, at least in the federal courts, it is not new. In *People v. Connors*, 253 Ill. 266, 97 N.E. 643 (1912), the defendants held guns to members of a rival labor union and told them to take off their overalls or they would be shot. Although the workers complied, and there was no shooting, the defendants were convicted of assault with an intent to murder. 253 Ill. at 273. In upholding the conviction, the Supreme Court of Illinois held that the crime is "complete where it is shown that the assailant, with the

---

**4.** See Michenfelder, *supra* note 3, at 1012–13 (35,000 carjackings or attempted carjackings were committed during each of the years 1987–92, and firearms were used 59% of the time).

**5.** The government does not contend, as it might have, that the specific intent required by the

1994 amendment is an element only in carjacking cases where death results and the death penalty is sought. For that reason and because I conclude Ali had the specific intent required by the statute in any event, I do not need to address that issue.

present ability to destroy life or do great bodily harm, draws a dangerous weapon on another and threatens to kill him unless the party assailed complies immediately with some unlawful condition or demand.... [T]he offense is complete even though commission of the felony is averted by the submission of the assailed party to the unlawful demands made upon him." *Id.* 97 N.E. at 647–48.

Some conditions on intent may bring the conduct out of the reach of the statute. In *Hairston v. Mississippi,* 54 Miss. 689 (1877), Hairston attempted to remove the personal effects of a laborer from a plantation. When the plantation owner grabbed Hairston's mules to prevent him from removing the property, Hairston pointed a pistol at him and angrily threatened to " 'shoot any G-d d--d man who attempts to stop my mules.' " *Id.* at 692. The plantation owner released the mules, and Hairston was convicted of assaulting him with intent to murder. The Supreme Court of Mississippi reversed the conviction. Because the plantation owner was trespassing on Hairston's property by grabbing his mules, the threat to shoot was conditioned on a demand Hairston had a right to make, and thus he could not be guilty of the offense.

Here, of course, there can be no doubt that the intent to shoot the victims was conditioned on a demand—that they turn over their cars—that Lennon and Ali had no right to make.

Not all instances of conditional intent involve demands by the defendant. A person may break into a house intending to rape its occupant if she is home, or to steal from it only if no one is home. Section 2.02(6) of the Model Penal Code provides as follows:

> *Requirement of Purpose Satisfied if Purpose Is Conditional.* When a particular purpose is an element of an offense, the element is established although such purpose is conditional, unless the condition negatives the harm or evil sought to be prevented by the law defining the offense.

See also *United States v. Arrellano,* 812 F.2d 1209, 1212 n. 2 (9th Cir.1987).

Viewed under this standard, the conditional nature of Ali's intent obviously does not help him. The evil sought to be prevented by § 2119 is not "negatived" by the condition, it *is* the condition. Section 2119 is not a murder or assault statute, it is a car robbery statute.

■ Ali's argument on this motion relies in part on the premise that there was insufficient evidence from which a juror could find an intent on his part that recalcitrant victims be shot. However, as stated above, there was ample evidence from which a jury could infer that intent. Lennon told Ali that a gun would be used and showed him the gun. Lennon intended to shoot uncooperative victims, and threatened to do so in Ali's presence. Ali himself demonstrated a seriousness of purpose by punching one of the victims in the face simply because he hesitated in handing over his money. Ali makes much of the fact that there is no direct evidence of his intent, but there rarely is such evidence. The jury could readily have inferred it from the circumstances, and Ali thus cannot satisfy his heavy burden of establishing the insufficiency of the evidence.

Finally, Ali's reliance on the rule of lenity is misplaced. Whether conditional intent is sufficient to establish the intent element of the carjacking offense is not a question of statutory construction, but of criminal law.

The jury instructions on the element of intent in the carjacking counts included the following:

> In some cases, intent is conditional. That is, a defendant may intend to engage in certain conduct only if a certain event occurs. In this case, the government contends that the defendant intended to cause death or seriously bodily harm if the alleged victims had refused to turn over their cars. If you find beyond a reasonable doubt that the defendant had such an intent, the government has satisfied this element of the offense.
>
> If you find that the co-defendant, Vernon Lennon, acted with the intent to cause death or serious bodily injury, that is not sufficient. You must find that the defendant shared in that intent before you can conclude that this element has been satis-

fied. I remind you that you must consider each count separately.

In view of the foregoing, those instructions, and the charge as a whole, properly permitted the jury, if it accepted the government's evidence, to find Ali guilty of carjacking.

### D. *Conclusion*

It is likely that many incidents of what both Congress and the general public would call carjacking are no longer prohibited by § 2119. Without doubt, some car robbers threaten death or serious bodily injury, but intend to flee the scene rather than escalate the confrontation if the demand for the car is rebuffed. A defendant with that state of mind may not be subject to prosecution under § 2119, even if the threat succeeds and he robs the car.

However, because Ali had the specific intent required by the statute, albeit conditionally, his motion to set aside the verdicts and for a new trial is denied.

So Ordered.