

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-10-1997

# United States v. Anderson

Precedential or Non-Precedential:

Docket 96-1496

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation
"United States v. Anderson" (1997). *1997 Decisions.* Paper 59.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/59

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

NO. 96-1496

————————

UNITED STATES OF AMERICA,
Appellee,

v.

JEFFREY ANDERSON,
a/k/a JONATHAN THOMAS,
Appellant.

————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 95-cr-00424-01)

————————

Argued: January 27, 1997

————————

Before: BECKER and ROTH, *Circuit Judges*,
and ORLOFSKY, *District Judge*.[*]

(Filed: March 10, 1997)

————————

[*] Honorable Stephen M. Orlofsky, United States District Judge
for the District of New Jersey, sitting by designation.

1

MAUREEN KEARNEY ROWLEY, ESQUIRE
Chief Federal Defender
ELAINE DEMASSE, ESQUIRE
Assistant Federal Defender,
Senior Appellate Counsel
ROBERT EPSTEIN, ESQUIRE
(ARGUED)
Assistant Federal Defender
ELLEN C. BROTMAN
Assistant Federal Defender
Federal Court Division
Defender Association of Philadelphia
Suite 800 - Lafayette Building
437 Chestnut Street
Philadelphia, PA 19106-2414

COUNSEL FOR APPELLANT

MICHAEL R. STILES, ESQUIRE
United States Attorney
WALTER S. BATTY, JR., ESQUIRE
Assistant United States Attorney,
Chief of Appeals
J. ALVIN STOUT, III, ESQUIRE
(ARGUED)
Assistant United States Attorney
United States Department of Justice
United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476

COUNSEL FOR APPELLEE

_____

**OPINION OF THE COURT**

_____

ORLOFSKY, *District Judge*.

Jeffrey Anderson appeals from his conviction after a jury trial on a three-count

superseding indictment charging him with carjacking, in violation of 18 U.S.C. § 2119 (the

"carjacking statute"), using and carrying a firearm during a crime of violence, in violation of 18

U.S.C. § 924(c)(1), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

This appeal requires this Court to address for the first time the quantum of evidence that the government must offer at trial such that a jury could find beyond a reasonable doubt that the defendant had the requisite "intent to cause death or serious bodily harm," within the meaning of the 1994 amendment to the carjacking statute. The federal courts which have considered this issue have reached different conclusions.[1] We hold that it is sufficient for the government to establish beyond a reasonable doubt that a defendant possessed a conditional intent to cause death or serious bodily harm to the carjacking victim -- in other words, that the defendant intended to cause death or serious bodily harm if the victim resisted the defendant's efforts to obtain the victim's car. In addition, we conclude that, when viewing the evidence presented at trial in a light most favorable to the government, a rational trier of fact could have found beyond a reasonable doubt that the defendant in this case had such an intent to kill or cause serious bodily harm, if necessary, in order to obtain the victim's car. We, therefore, affirm.

## I. Facts and Procedural Background

On December 28, 1994, at approximately 9:30 p.m., Pamela White was inside her mother's home when she noticed Mark Stanley sitting at a table appearing jumpy, upset and nervous. Ms. White then noticed Jeffrey Anderson, whom she did not know at the time, standing in the vestibule of the house. Ms. White's mother asked Anderson to leave and he refused. Ms. White observed the imprint of a gun in the front of Anderson's jersey.

Anderson entered the living room of the house, exchanged words with Stanley and began to struggle with him. When Anderson brandished his .38 caliber handgun at Stanley, Ms. White

---

[1]Compare United States v. Holloway, 921 F. Supp. 155 (E.D.N.Y. 1996) and United States v. Norwood, 948 F. Supp. 374 (D.N.J. 1996), with United States v. Randolph, 93 F.3d 656 (9th Cir. 1996).

tried to get her children and her mother upstairs. Stanley then broke away from Anderson and fled up the stairs behind them. Anderson followed them up the stairs with the gun in his hands. Ms. White heard a gunshot which she later discovered had gone into the ceiling. After firing the gunshot, Anderson fled from the house.

After fleeing from the house, Anderson passed directly by a marked police car, making eye contact with Officer Terrence Graham, who was inside the car. Graham briefly pursued Anderson, who was still carrying the gun in his hand at the time, before losing sight of him. Anderson then came upon Alfred Tennessee a few blocks away. Tennessee was washing a car belonging to a friend. While kneeling down near the front passenger side tire, Tennessee suddenly felt Anderson's gun pressed against the back of his neck. Tennessee turned to see a man whom he subsequently identified as Anderson, clutching the gun. Anderson told Tennessee that "the police [are] after me, I'm taking the car." Tennessee responded by telling Anderson to take the car.

Tennessee, however, ran around to the driver's side of the vehicle in an attempt to stop Anderson from taking the car. Anderson pointed the gun out the driver's side window at Tennessee and sped off in the car. Tennessee heard a gun shot when Anderson was a half-block away, although he did not see who fired the shot, or in which direction it was fired. Tennessee informed nearby police of the incident and the police began to pursue Anderson.

This vehicular pursuit ended when the vehicle Anderson was driving stalled out. Anderson exited the vehicle with the gun in his hand, and refused to comply with a police officer's order to drop the gun. Six officers pursued Anderson on foot. The officers finally caught up with him and forcibly removed the gun from his hand. Anderson was arrested and placed in a police vehicle. The officers subsequently ascertained that his gun was loaded and operable at the time of his arrest.

On November 19, 1995, Jeffrey Anderson was charged in a superseding indictment filed in the Eastern District of Pennsylvania with carjacking, in violation of 18 U.S.C. § 2119 (Count

4

1), using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Count 2), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 3). A jury trial was held, and the jury returned a verdict of guilty on each of the three counts. On June 4, 1996, Anderson was sentenced to a prison term of 156 months on Counts 1 and 3, to run concurrently, and to a consecutive 60 month term of incarceration on Count 2. Anderson was also sentenced to a three year period of supervised release, and the imposition of a special assessment of $50.

Anderson filed a timely Notice of Appeal from his convictions on Counts 1 and 2. We have jurisdiction under 28 U.S.C. § 1291, and review Anderson's convictions in order to ascertain whether, when viewing the evidence presented at trial in a light most favorable to the government, any rational trier of fact could have found the essential elements of the offenses charged in Counts 1 and 2, beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). However, since Anderson's trial counsel failed to renew his motion for judgment of acquittal at the end of the defense's case, Anderson has failed to preserve this issue for appeal. See United States v. Barel, 939 F.2d 26, 37 (3d Cir. 1991). Accordingly, the alleged insufficiency of the evidence with respect to the essential elements of the offense must constitute plain error in order to warrant reversal. See id.; Fed. R. Crim. P. 52(b).


## II. Analysis

On appeal, Anderson contends that his convictions under Counts 1 and 2 of the superseding indictment should be reversed since the evidence presented at trial was insufficient to establish his guilt under 18 U.S.C. § 2119, beyond a reasonable doubt. Section 2119 of Title 18 provides:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle
> that has been transported, shipped, or received in interstate or foreign commerce
> from the person or presence of another by force and  violence or by intimidation, or

attempts to do so, shall --

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury results, be fined under this title or imprisoned not more than 25 years, or both, and

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119 (as amended in 1994). Specifically, Anderson claims on appeal that the evidence presented by the government at trial was insufficient to establish that he had the requisite "intent to kill or cause serious bodily harm," within the meaning of the carjacking statute. See 18 U.S.C. § 2119.

"When the sufficiency of the evidence at trial is challenged, we must view the evidence in the light most favorable to the government." United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995)(citing Glasser v. United States, 315 U.S. 60, 80 (1942)). Moreover, "[a] claim of insufficiency of evidence places a very heavy burden on the appellant. . . [This Court] must affirm the conviction[] if a rational trier of fact could have found defendant guilty beyond a reasonable doubt, and the verdict is supported by substantial evidence." Coyle, 63 F.3d at 1243; see also United States v. Gonzalez, 918 F.2d 1129, 1132 (3d Cir. 1990), cert. denied, 499 U.S. 982 (1991). Indeed, "'[o]nly when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict.'" United States v. McNeill, 887 F.2d 448, 450 (3d Cir. 1989), cert. denied, 493 U.S. 1087 (1990) (citing Brandom v. United States, 431 F.2d 1391, 1400 (7th Cir. 1970), cert. denied, 400 U.S. 1022 (1971)).

Anderson contends that, in order to be found guilty of carjacking, the statute requires that the government prove beyond a reasonable doubt that he intended to cause death or serious bodily injury whether or not the victim agreed to relinquish his car. In contrast, the government

maintains that the "intent to cause death or serious bodily injury" element of the statute is satisfied if the government is able to show that Anderson intended to cause death or serious bodily injury if the victim refused to relinquish his or her car.

The few federal courts to consider this issue have reached different conclusions. Compare United States v. Holloway, 921 F. Supp. 155 (E.D.N.Y. 1996) and United States v. Norwood, 948 F. Supp. 374 (D.N.J. 1996), with United States v. Randolph, 93 F.3d 656 (9th Cir. 1996). In Holloway, the court found that the intent element of the carjacking statute is satisfied if the government proves beyond a reasonable doubt that the defendant intended to cause death or serious bodily harm to the victim if the victim refused to turn over his car. 921 F. Supp at 161. See also Norwood, 948 F. Supp. 374.

In contrast, in Randolph, the Ninth Circuit found that "the mere conditional intent to harm a victim if she resists is simply not enough to satisfy § 2119's new specific intent requirement." 93 F.3d at 665. The court held that absent evidence that the defendant intended to cause death or serious bodily harm -- whether or not the victim turned over his or her car -- the intent element could not be established. Id.  In reversing the defendant's conviction under the carjacking statute, the court noted that "[a] key distinction between this case and federal cases sustaining convictions for analogous specific intent offenses is that [the defendant] did not personally harm [the victim], even though he was armed and clearly capable of harming her." Id. at 663.

A review of the legislative history and development of the carjacking statute is critical in determining which court's interpretation of the intent provision of the carjacking statute this Court should adopt. The carjacking statute, as initially enacted in 1992, contained no intent provision whatsoever. The original statute, the "Anti Car Theft Act of 1992," codified at 18 U.S.C. § 2119, provided that:

> Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and  violence or by intimidation, or attempts to do so, shall--

7

> (1) be fined under this title or imprisoned not more than 15 years, or both,
> (2) if serious bodily injury results, be fined under this title or imprisoned not more than 25 years, or both, and
> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

18 U.S.C. § 2119 (1992).

Not long after the enactment of the carjacking statute, however, several amendments were proposed which were intended to be applied in cases where a death resulted from the carjacking. Two such changes were first proposed in the Senate. The first change sought was the inclusion of the death penalty in cases where a carjacking resulted in death. See 139 Cong. Rec. S15295, S15301, S15303 (1993). Another proposed change to the statute was the elimination of the "possessing a firearm" requirement from the proposed death penalty provision. Id. In proposing this addition, Senator Lieberman argued that "[i]f the person in a carjacking is killed as a result of a knife or other weapon or just as a result of the carjacking, then the criminal ought to be subject to death himself." Id.

Presumably, in an effort to avoid subjecting the death penalty provision proposed by the Senate to Eighth Amendment attack for authorizing the death penalty for an accomplice who neither killed nor intended to kill or harm a victim, the House inserted an additional modification to the death penalty provision by adding the "intent to cause death or serious bodily harm" requirement. See Holloway, 921 F. Supp. at 158 (citing Enmund v. Florida, 458 U.S. 782 (1982)). Accordingly, the amendments to the carjacking statute proposed by the Senate and the House were combined to form the following provision of the Violent Crime Control and Law Enforcement Act of 1994 which modified the carjacking statute as follows:

> (14) CARJACKING--Section 2119(3) of title 18, United States Code, is amended by striking the period after "both" and inserting ", or sentenced to death.";  and by striking ", possessing a firearm as defined in section 921 of this title," and inserting ", with the intent to cause death or serious bodily harm."

Pub. L. No. 103-322, 108 Stat. 1796, 1970 (1994).

Because Section 2119(3), to which the Violent Crime Control and Law Enforcement Act refers, is solely a penalty provision applicable to carjackings resulting in death,[2] the relevant language of the Violent Crime Control and Law Enforcement Act reveals that the amendments contained in that Act apparently were intended only to apply to carjackings resulting in death. The first amendment prescribing that the language "or sentenced to death," be added to 2119(3) was easily incorporated into the original carjacking statute.

Closer examination of the Violent Crime Control and Law Enforcement Act, however, reveals certain inconsistencies which made the incorporation of the second two amendments into the original statute somewhat more difficult. For instance, the amendment instructs that section 2119(3) is to be amended by striking the language "possessing a firearm as defined in section 921 of this title." The "possessing of a firearm" requirement, however, was not contained in § 2119(3). Instead, it was included in the language of the substantive offense. Accordingly, the elimination of this language from the statute had the effect of eliminating the "possessing of a firearm" requirement for all carjackings, and not just those which resulted in death. Because the possession of a firearm was eliminated from the substantive offense rather than from the penalty provision applicable to carjackings resulting in death, as apparently intended, the new intent requirement was also substituted in the statutory language as an element of the substantive offense and not simply into 2119(3) as directed by Violent Crime Control and Law Enforcement Act.

> After the incorporation of the 1994 amendments, the carjacking statute, now provides: Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall --
>    (1) be fined under this title or imprisoned not more than 15 years, or both,
>    (2) if serious bodily injury results, be fined under this title or imprisoned not more than 25 years, or both, and

---

[2] 18 U.S.C. § 2119(3), as originally enacted in 1992, provided that "if death results, [a defendant shall] be fined under this title or imprisoned for any number of years up to life, or both."

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119 (as amended in 1994).

As noted by the court in Holloway, as written, the current statute, contrary to Congressional intent, requires the element of "intent to cause death or serious bodily injury" for all carjackings, regardless of whether death results. 921 F. Supp. at 158. Thus, the court found that to interpret the "intent to cause death or serious bodily injury" language of the 1994 amendment to require the Government to establish that a defendant unconditionally intended to cause death or serious bodily injury whether or not the victim relinquished his or her car, would drastically narrow the application of the carjacking statute, when, in fact, the legislative history reveals that the intent element should not have even been added as an element of the substantive offense at all. Indeed, the legislative history reveals that the amendment was intended "to broaden and strengthen [the carjacking statute] so our U.S. attorneys (sic) have every possible tool available to them to attack the problem.'" 139 Cong. Rec. S15295, S15301 (1993)(statement of Sen. Lieberman)).

In contrast to the interpretation of the intent provision of the carjacking statute adopted by the Holloway court, the conclusion of the Ninth Circuit in Randolph directly contravenes the intent of Congress to broaden the application of the carjacking statute by the inclusion of the 1994 amendments. In effect, the Randolph rationale seemingly limits the application of the statute only to cases where the defendant actually physically harmed the victim. Rarely will there be a case where there will be evidence of a defendant's unconditional intent to cause death or serious bodily harm whether or not the victim relinquishes his or her car, yet the victim sustains no injuries. It is apparent, however, that Congress did not intend for death or serious bodily injury to be a prerequisite to every carjacking conviction, since Congress has provided for enhanced penalties when a carjacking does, in fact, result in death or serious bodily injury. See § 2119(2) and (3).

10

In their treatise on criminal law cited by the court in Holloway, Professors LaFave and

Scott address the issue of conditional intent generally, outside the context of the carjacking

statute. In so doing, the authors first pose the question:

> [w]here a crime is defined so as to require that the defendant have a particular
> intention in his mind -- as larceny requires that he have an intention to deprive the
> owner permanently of his property, burglary that he have an intention to commit a
> felony, and assault with intent to kill that he have an intention to kill -- the problem
> arises whether he has the required intention when his intention is conditional.

Wayne R. Lafave and Austin W. Scott, Jr., Substantive Criminal Law §3.5(d), at 312 (1986).

The authors do not answer this question with a simple "yes" or "no." Instead, citing the Model

Penal Code as authority, they provide that, "[w]here a crime requires the defendant to have a

specified intention, he has the required intention although it is a conditional intention, 'unless

the condition negatives the harm or evil sought to be prevented by the law defining the

offense.'" Id. at 313 (citing Model Penal Code § 2.02(6)).

Section 2.02(6) of the Model Penal Code provides that "[w]hen a particular purpose is

an element of an offense, the element is established although such purpose is conditional, unless

the condition negatives the harm or evil sought to be prevented by the law defining the

offense."[3] The Explanatory Note to this section elaborates on the issue of conditional intent by

setting forth the example that a defendant would, of course, be guilty of the crime of assault

---

[3] A few states have even incorporated "conditional intent" provisions similar to section 2.02(6) of the Model Penal Code into their own respective criminal codes. See, e.g., Del. Code Ann. tit. 11 § 254 ("[t]he fact that a defendant's intention was conditional is immaterial unless the condition negatives the harm or evil sought to be prevented by the statute defining the offense"); Pa. Stat. Ann. tit. 18 § 302(f) ("[w]hen a particular intent is an element of an offense, the element is established although such intent is conditional, unless the condition negatives the harm or evil sought to be prevented by the law defining the offense"); Hawaii Rev. Stat. § 702-209 ("[w]hen a particular intent is necessary to establish an element of an offense, it is immaterial that such intent was conditional unless the condition negatives the harm or evil sought to be prevented by the law prohibiting the offense).

with the intent to rape if the government were able to establish that the defendant intended to overcome the will of his victim if she resisted his advances. See Model Penal Code and Commentaries §2.06 (American Law Institute).

Therefore, according to both Lafave and Scott and the Model Penal Code, the question becomes not whether a defendant's conditional intent is sufficient to satisfy an intent element of a statute, but which conditions negative the harm sought to be prevented by a statute and which will not. This analysis can be readily applied to the carjacking statute. The determination of whether a defendant's intent to kill or cause serious bodily harm if the victim does not relinquish his or her car is sufficient to establish the requisite "intent to kill or cause serious bodily harm" within the meaning of the statute, requires us to ascertain the nature of the condition attached to the intent. When this intent is phrased slightly differently -- the intent to kill or cause serious bodily harm to the victim unless the victim parts with his or her car -- the condition -- unless the victim parts with his or her car -- becomes apparent. If, in fact, the condition is not met and the victim relinquishes his or her vehicle, is the harm sought to be prevented by the carjacking statute negated? We think not.

The fact that a defendant is able to achieve the goal of obtaining the car without resorting to the infliction of death or serious bodily harm obviously does not negate the intent to cause such harm in order to obtain the car. Whether the harm sought to be prevented by the statute is the theft of cars, the threat to cause death or serious bodily harm in order to obtain another's car, or the causing of death or serious bodily harm, the intervening event of the victim giving up his or her car in order to avoid serious injury in no way negatives the harm sought to be prevented by the statute. Indeed, the fact that the victim opted to turn over his or her car in the hope of avoiding serious harm does not alter the fact that the defendant possessed an intent to cause death or serious bodily harm in order to obtain the car.

In addition, the notion of conditional intent has been embraced by the majority of courts which, upon interpreting other statutes containing analogous specific intent provisions, have

12

held that a defendant's conditional intent is sufficient to support a conviction under the particular statute. For example, in Shaffer v. United States, 308 F.2d 654 (5th Cir. 1962), cert. denied, 373 U.S. 939 (1963), the defendant, who was confined in an Army jail, brandished a gun and threatened to harm anyone who tried to stop him from escaping. The defendant was then charged and convicted of "assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse," pursuant to 18 U.S.C. § 113(c). In considering whether there was sufficient evidence to support a finding that the defendant had the requisite "intent to do bodily harm," under § 113(c), the Fifth Circuit found that there was sufficient evidence for a jury to conclude that the defendant intended to cause bodily harm if his escape was met with any resistance, and that the evidence of such a "conditional" intent was sufficient to satisfy the intent element of the statute. Id. at 655. Similarly, in People v. Connors, 97 N.E. 643 (Ill. 1912), the Illinois Supreme Court held that a defendant's "intent to commit an offense which is coupled with an unlawful condition or demand," is sufficient to satisfy a specific intent element of a statute. Id. at 648. See also People v. Vandelinder, 481 N.W.2d 787 (Mich. App. 1992); Commonwealth v. Richards, 293 N.E.2d 854 (Mass. 1973). But see State v. Irwin, 285 S.E.2d 345, 349 (N.C. App. 1982)(holding that "evidence that a defendant would have had an intent to kill only if a particular event occurred is not sufficient" to convict defendant of assault with intent to kill); State v. Kinnemore, 295 N.E.2d 680, 683 (Ohio App. 1972)(defendant's threat to kill in order to effectuate his escape insufficient to establish assault with intent to kill).

Thus, we conclude that the doctrine of conditional intent is consistent not only with Congress' purpose in amending the carjacking statute in 1994 and the language of the Model Penal Code, but also with the majority of cases interpreting statutes with analogous specific intent elements. See Shaffer, 308 F.2d 654; Connors, 97 N.E. 643; Vandelinder, 481 N.W.2d 787; Richards, 293 N.E.2d 854. Accordingly, we hold that in order to satisfy the "intent to cause death or serious bodily harm" provision of 18 U.S.C. § 2119, it is sufficient for the government to establish that the defendant intended to cause death or serious bodily harm if the victim

13

refused to relinquish his or her car. However, because of the unique nature of the language and legislative history of the carjacking statute, as well as the clear Congressional intent to expand the application of the carjacking statute with the 1994 amendment, our holding today -- that evidence of a conditional intent to kill or cause serious bodily harm is sufficient to satisfy the specific "intent to cause death or serious bodily injury" requirement -- is limited to the carjacking statute.

Therefore, the relevant inquiry in this case is whether, when viewing the evidence in the light most favorable to the government, there is substantial evidence upon which a reasonable jury could determine beyond a reasonable doubt that Anderson possessed the requisite "conditional" intent to kill or cause serious bodily injury if Tennessee did not relinquish the car. See Coyle, 63 F.3d at 1243. Based upon the evidence presented at trial, we find that Anderson has failed to meet his very heavy burden of establishing that the government did not present enough evidence to overcome this hurdle. The government introduced evidence that Anderson was involved in some sort of altercation at Pamela White's mother's house where Anderson brandished a .38 caliber handgun which he ultimately fired in the house, albeit at the ceiling. Anderson then fled from the house carrying the gun, and was seen by a police officer who began to pursue him.

Anderson then came upon Tennessee, who was washing his friend's car. Anderson placed the loaded and operable gun up against the back of Tennessee's neck. When Tennessee turned around, Anderson pointed the gun right at him, stating that he was taking the car. Once in the car, Anderson once again pointed the loaded weapon at Tennessee's face as Tennessee tried to stop Anderson. Anderson subsequently fired a shot from the car in an unknown direction.

Based upon the totality of all the surrounding facts and circumstances, we conclude that there was sufficient evidence presented at trial to permit a rational trier of fact reasonably to conclude beyond a reasonable doubt that Anderson intended to cause serious bodily injury to Tennessee, or even kill him, if Tennessee failed to surrender the vehicle. Therefore, Anderson's

14

convictions for carjacking in violation of 18 U.S.C. § 2119, and using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1), will be affirmed.[4]

_____

[4]Having concluded that no error occurred in the court below, we need not address the "plain error" standard as it relates to Anderson's case.