**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**HILTON LAKE, Defendant**

No. 1996-161

District Court of the Virgin Islands

Div. of St. Thomas and St. John

July 7, 1997

217

MARK PATTERSON, (Assistant United States Attorney), St. Thomas, U.S.V.I., *for Plaintiff*

STEPHEN BRUSCH, (Assistant Federal Public Defender), St. Thomas, U.S.V.I., *for Defendant*

MOORE, *Chief Judge*

**MEMORANDUM**

Hilton Lake was tried before a jury on a two-count indictment charging carjacking and carrying a firearm during the commission of a carjacking. Lake was found not guilty on the carjacking count but guilty on count two, carrying a firearm during a crime of violence. Lake has filed a motion for a judgment of acquittal or in the alternative for a new trial. For the following reasons, Lake's motion for an acquittal is denied. Lake's motion for a new trial is also denied.

## I. Facts

On June 3, 1996, the defendant Hilton Lake approached Milton Clarke at a secluded beach, while Clarke was sitting on the sand reading a newspaper, and asked whether a white car parked on the top of the road belonged to Clarke. Clarke answered yes and asked whether there was a problem. The defendant replied no and that he just wanted to know whether the car was Clarke's. Clarke returned to reading his newspaper because Lake did not show any more interest in him at that point. Lake walked further down the beach but then turned around and returned to Clarke and asked to borrow the car. Clarke refused. Lake said it was an emergency. Clarke said the car belonged to a friend and that he could not lend his friend's car. Lake again walked away, returned a second time, and again asked to borrow the car and asked whether Clarke had a cellular phone. Getting fed up, Clarke told Lake to leave him "the hell alone." Lake retreated for a third time, and sat a distance away for three to five minutes, but then approached Clarke for a third time asking to borrow the car and Clarke again told him to leave him "the fuck alone." Lake then lifted up his shirt revealing the handle of gun in his waist band and asked Clarke if he knew what that was. Clarke stood up and started backing away. Lake pulled the gun out, put it against Clarke's face, and asked for the keys to his car. Clarke backed away, grabbed his knapsack and headed towards and went into the water. Lake followed him, but walked out onto a promontory of rocks and pointed the gun and demanded the keys. Clarke continued to tell Lake loudly to just leave him alone.

219

While Clarke was in the water exchanging words with Lake, Clarke's friend, Pamela Croaker, came down to the beach. Croaker observed Clarke in the water and the defendant on the rocks with his back facing her. When Clarke saw her he yelled to her, "He's got a gun," which Croaker apparently did not hear. (Tr. 60.) Lake turned around and walked off the promontory towards Croaker. When he approached Croaker, Lake asked whether she was with Clarke and she responded yes because she had planned to sit with Clarke on the beach. Lake then demanded her car keys and she refused. When Lake suddenly grabbed the keys she was holding in her right hand, Croaker grabbed them back. Croaker testified that Lake then

> had hold of my wrist and was trying to twist [the keys] off my hand and we rolled in the sand and the water and kind of were fighting. And then we both stood up. And on my key chain I have mace and managed to get it undone and aim it at him so when I stood up I had the mace aimed at him but he had a gun aimed at me.

(Tr. 94-95.) Clarke also observed Croaker and Lake "kind of rolling around in the sand." (Tr. 60.) Lake waved the gun in front of Croaker demanding her keys. She protested that she did not have the keys and that she had hitchhiked to the beach. Lake told her to show him her keys and noticed a car key on the key chain. When he again demanded the keys, Croaker relaxed her grip and let Lake take them. She then asked that he leave her house keys and only take her car keys.

The top of the road where the cars were parked was out of sight from the beach. To access the beach from the road required a walk down a steep path through bushes, rocks and shrubbery. After taking Croaker's keys, Lake walked up the path to Croaker's car and departed. When Croaker and Clarke arrived at the top of the path, they noticed that Lake had left Croaker's house keys on top of Clarke's car. Shortly thereafter Croaker and Clarke went to the police to make a report. Lake was arrested in Croaker's car that same day while at a McDonald's drive-through. He was identified by Croaker and Lake from a photo array that same night.

After his arrest, Lake was questioned by police officers and an agent for the Federal Bureau of Investigation. Lake told the FBI

agent he had hitched a ride to the secluded beach, that he had asked a man for his car keys, and when that man said no, he asked a woman for her car keys. He struggled with her for the keys, and then pulled out what he said was a toy gun, pointed it at her and took her car. Lake told the FBI agent and officers that he had thrown the gun in a swampy area in Red Hook on the East end of St. Thomas, but declined to take the officers to where the gun might have been located. When asked to tell the truth about whether it was toy gun or not, he responded that he would think about it. (Tr. 82-83.) Clarke and Croaker provided descriptions of the gun during their testimony. Clarke described the gun as "silver with a black handle and a barrel. Like a cowboy gun type of thing." (Tr. 53.) Clarke also testified that he didn't know if it was real or if it was a toy, but that he was very frightened. (Tr. 54.) Croaker testified that it was "long gun" that was "silver white" and looked like a "cowboy gun." (Tr. 95.)

The indictment charged in Count One:

> On or about the 3rd day of June 1996, at St. Thomas, in the District of the Virgin Islands, the defendant, HILTON LAKE, did with the intent to cause serious bodily harm, take a motor vehicle that has been transported in interstate commerce, from the person or presence of another, by force and violence or by intimidation . . . .

Count Two charged a violation of 18 U.S.C. § 924(c):

> On or about the 3rd day of June 1996, at St. Thomas, in the District of the Virgin Islands, the defendant, HILTON LAKE, did knowingly carry a firearm, during and in relation of a crime of violence for which he may be prosecuted in a court of the United States, that is carjacking in violation of Title 18, United States Code, Section 2119.

At the close of the government's case, Lake moved for a judgment of acquittal pursuant to RULE 29 of the FEDERAL RULES OF CRIMINAL PROCEDURE. The motion was denied and Lake put on his case, which included an alibi defense. After deliberations, the jury

221

returned a verdict of not guilty of carjacking (count one) and guilty on count two, the gun charge.

## II. Discussion

Lake argues that he is entitled to a judgment of acquittal on the ground that there was insufficient evidence to find him guilty on count two. Lake also claims that he is entitled to a new trial because the government did not produce rough notes from officers who questioned Lake, and because the Court failed to list the elements of carjacking when it instructed the jury on count two. This Court finds there was sufficient evidence to convict the defendant on count two. In addition, the Court finds that a new trial is not required.

### A. *Insufficiency of Evidence*

■ In order to find a defendant guilty of carrying a firearm in relation to the commission of a carjacking under 18 U.S.C. § 924(c), there must be sufficient evidence from which a jury could find the defendant guilty of the elements of carjacking as defined in 18 U.S.C. § 2119. *See United States v. Jenkins*, 90 F.3d 814, 821 (3d Cir. 1996)(conviction under 18 U.S.C. 924(c) for using a firearm in connection with drug trafficking crime must be reversed when insufficient evidence to convict on the predicate offense). However, the mere fact that the jury acquitted Mr. Lake of carjacking is not a finding as a matter of law that there was not sufficient evidence for the jury to have convicted him of 18 U.S.C. § 2119. Nor does his acquittal mandate a reversal of his conviction on the gun charge. *See United States v. Powell*, 469 U.S. 57, 83 L. Ed. 2d 461, 105 S. Ct. 471 (1984)(reversing court of appeals ruling that an acquittal on predicate felony necessarily mandated acquittal on compound offense because it indicated insufficient evidence to support the predicate offense).

■ The standard used by a trial court in granting a Rule 29 motion for acquittal is the same as the standard used by an appellate court reviewing a conviction. When reviewing a jury verdict, the evidence is viewed in the light most favorable to the government, and the conviction is affirmed if a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.

*Jenkins*, 90 F.3d at 817. "A defendant challenging the sufficiency of the evidence bears a heavy burden." *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992). Only "when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997)(citation and internal quotations omitted).

The crime of carjacking is set out in 18 U.S.C. § 2119 ["the carjacking statute"] and, as recently amended in 1994, provides:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
>
> (1) be fined under this title or imprisoned not more than 15 years, or both,
>
> (2) if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both, and
>
> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

The elements for carjacking are thus (1) with an intent to cause death or serious bodily harm, (2) the taking from the person or presence of another, (3) by the use of force and violence or intimidation, (4) a motor vehicle that has been transported, shipped or received in interstate or foreign commerce. Lake argues insufficiency of evidence on elements one, two and four of the underlying crime of carjacking. Lake also argues there was insufficient evidence that he was carrying a firearm in connection with the crime of carjacking, a necessary element of 18 U.S.C. 924(c).

1. Intent To Cause Death or Serious Bodily Harm

The United States Court of Appeals for the Third Circuit has recently addressed the quantum of evidence necessary for a jury to

223

find beyond a reasonable doubt that a defendant had the requisite 'intent to cause death or serious bodily harm,' as that language had been added to the carjacking statute in 1994. *Anderson*, 108 F.3d at 482. Courts construing this language have reached different conclusions about the specific mental state necessary to satisfy it. The United States Court of Appeals for the Ninth Circuit, for example, requires proof that the defendant had the unconditional intent to cause death or serious bodily injury, even if the victim agreed to relinquish the car. *United States v. Randolph*, 93 F.3d 656 (9th Cir. 1996). Other courts have found proof of a conditional intent to be sufficient, i.e. evidence of an intent to cause death or serious bodily injury only if the victim did not relinquish his or her car. *United States v. Holloway*, 921 F. Supp. 155 (E.D.N.Y. 1996); *United States v. Norwood*, 948 F. Supp. 374 (D.N.J. 1996). Looking at the legislative history of the 1994 amendments and other cases interpreting statutes with analogous specific intent elements, the Court of Appeals for the Third Circuit concluded that a conditional intention to cause death or serious bodily injury would be sufficient to establish the intent element of carjacking. *Anderson*, 108 F.3d at 485.

Lake contends that the government nevertheless failed to prove that he possessed even a conditional intent. In *Anderson* the court summarized the evidence which there proved conditional intent:

> The government introduced evidence that Anderson was involved in some sort of altercation at Pamela White's mother's house where Anderson brandished a .38 caliber handgun which he ultimately fired in the house, albeit at the ceiling. Anderson then fled from the house carrying the gun, and was seen by a police officer who began to pursue him.
>
> Anderson then came upon Tennessee, who was washing his friend's car. Anderson placed the loaded and operable gun up against the back of Tennessee's neck. When Tennessee turned around, Anderson pointed the gun right at him, stating that he was taking the car. Once in the car, Anderson once again pointed the loaded weapon at Tennessee's face as Tennessee tried to stop Anderson. Anderson subsequently fired a shot from the car in an unknown direction.

*Id.* at 485. In *Holloway,* the evidence was that a codefendant had told the defendant that a gun would be used and showed him the gun. The codefendant intended to shoot uncooperative victims and threatened to do so in the defendant's presence. The defendant "himself demonstrated a seriousness of purpose by punching one of the victims in the face simply because he hesitated in handing over his money." *Holloway,* 921 F. Supp. at 160. In *Norwood,* when the victim refused to turn over his car to the defendant Norwood and after Norwood unsuccessfully tried to unbuckle the seat belt, Norwood pointed a loaded semiautomatic handgun at the victim while his accomplice stated, "just kill him." *Norwood,* 948 F. Supp. at 379, n. 3.

■ The Court finds sufficient evidence in the record upon which a reasonable jury could infer that Lake possessed the intent to cause death or serious bodily injury if the victim did not give him her keys to the car. While no shots were fired and there was no direct evidence that Lake's gun was loaded and operable, Lake's statement that it was toy is contradicted by his later statement to one of the agents that he would "think about" whether he would tell the truth about the gun and his refusal to help the agents find the gun. From Lake's own statements, then, plus the description of the weapon by the victims, reasonable jurors could infer that the gun was real and operable. Similarly, Lake's question to Clarke, "Do you know what this is?" when he first displayed the gun, putting the gun to Clarke's face, Clarke's testimony that he was frightened by the gun, and Croaker's decision not to use her mace because Lake had the gun pointed at her could fairly be interpreted as threats by a reasonable juror. Finally the record clearly shows that Lake took the keys from Croaker by force after struggling with her in the sand. The net result was that Lake took the keys to Croaker's vehicle at the point of a gun. From all this evidence a reasonable jury could reasonably conclude that Lake would have used the gun to cause Croaker's death or serious bodily injury if she had not given up her keys.

2. Taking Of A Motor Vehicle From The Person Or Presence Of Another

The defendant contends that the evidence viewed in the light

most favorable to the government is insufficient to establish that the motor vehicle was taken from the person or presence of another. He notes that the crime that animated Congress was the theft of a car with an infant inside during which the child's mother was dragged by the vehicle for two miles to her death. (Defendant. Br. at 25-26, citing *United States v. Bishop*, 66 F.3d 569, 579 n. 12 (3d Cir. 1995)). Mr. Lake argues that the act of taking the car keys from Croaker when her car was out of sight a distance away does not satisfy the "from the person or presence" element of the crime of carjacking. This Court disagrees.

Few courts have specifically addressed this element of the carjacking statute. *See United States v. Perez-Garcia*, 56 F.3d 1 (1st Cir. 1995); *United States v. Murray*, 56 F.3d 74, 1995 WL 295438 (9th Cir. 1995)(unpublished disposition). While most carjacking cases present the situation where the victim is either inside or entering or getting out of the vehicle at the time of the carjacking, courts have held that the taking of the car keys at gunpoint from the victim even when the victim is not near the car is sufficient. *See, e.g. United States v. Garcia-Beltran*, 890 F. Supp. 67 (D.P.R. 1995). In denying a motion to dismiss the indictment, the court stated that defendants' alleged actions fit the elements of the crime:

> (1) defendants used [the victim's] pistol and later [a] 357 Magnum, (2) to take [the victim's] motor vehicle, (3) which allegedly had been transported, shipped, or received in interstate and foreign commerce, (4) from [the victim's] person or presence, (5) when the car keys were taken from [the victim] at gun point.

890 F. Supp. at 72. The car keys were taken from the victim while he was inside a house and his car was parked outside.

In *Perez-Garcia*, the defendant conceded that he effectively took the victim's car when he obtained her car keys at which time the victim was inside her house and the car was parked on the street. 56 F.3d at 3, n. 7. He nevertheless argued on appeal that this did not constitute a taking from the victim's person as charged in the

indictment.[1] The Court held that "it is apparent that the vehicle was taken from the person of Rosado when the defendant forced her to ride with him in her car to the family farm." 56 F.3d at 3. The court noted that the car was taken from the victim's presence when the keys were taken because the defendant had conceded that taking the keys was effectively taking the car.

■ Mr. Lake argues that this Court should not rely on the 'presence' holding of *Perez-Garcia* since it was based upon a concession by the defendant. Lake also points out that the car was not taken from the person of Croaker since Croaker was not forced to ride in the car with Lake. The Court nevertheless rejects these contentions and holds that the taking of a person's car keys is the equivalent of taking the car and that Lake accordingly took Croaker's car from her presence when he took her car keys from her on the beach at gun point.

■ Even if this Court did not equate taking the car with taking the car keys, the record provides an evidentiary basis for a finding that Croaker was sufficiently close to her car that it was a taking from her person or presence. The most thorough and relevant discussion of the 'person or presence' element of the carjacking statute can be found in the unpublished decision of the United States Court of Appeals for the Ninth Circuit. *Murray*, 56 F.3d 74, 1995 WL 295438. In *Murray*, the defendant knocked on the door of the victim's house and, pointing a gun at her when she opened the door, stated that he needed a car. The victim gave the defendant the keys to the car parked 30 feet from the front door of her home. Left tied-up inside her house, the victim then heard, but did not see, the defendant drive off in her car. *Id*. at **1. The court held that this evidence was sufficient for a jury to find that the defendant took the automobile from the person or presence of the victim. The court of appeals also approved the following jury instruction as properly stating the law: "'person or presence of another' means that the person who is in control of the automobile either is in the automobile or in such proximity to the automobile at the time of

---

[1] The indictment only charged that the car was taken from the person of the victim, and not from the person or presence of the victim.

the offense that the person could observe the automobile or gain quick and ready access to it" properly stated the law. *Id.* at **3. The court noted that "the term 'presence' has limits, but they were not transgressed in this case." *Id.* at **5. This Court similarly rules that the limits of the term 'presence' were not exceeded in this case is satisfied that the facts would support a jury finding that Croaker's car was taken from her presence when taken from a short distance away on the road.

### 3. Motor Vehicle Transported In Interstate Commerce

■ Officer Curtis Griffin testified that he was a life-long resident of the Virgin Islands, that no motor vehicles are manufactured in the Virgin Islands, and that all vehicles necessarily have to be imported. Such evidence is sufficient for a reasonable jury to find that the carjacked automobile previously had been transported in interstate commerce.

### 4. Carrying A Firearm

The gun used by Lake was never recovered. Both Croaker and Clarke, however, testified that they saw the defendant waving and pointing a gun at them. Clarke described the gun as "silver with a black handle and a barrel. Like a cowboy gun type of thing." Croaker testified that it was "long gun" that was "silver white" and looked like a "cowboy gun." While Lake did not testify at trial, evidence came out that he gave a statement in which he first said he used a toy gun. This initial statement, however, was contradicted by Lake's response that he would have to "think about" telling the truth about the gun. Lake's later refusal to help the officers find the gun could also support an inference by a reasonable juror that he was lying when he first said it was a toy. Thus viewed in the light most favorable to the government, the evidence in the record would support a jury finding that Lake used a real gun to take the car. *See United States v. Jones*, 16 F.3d 487 (2d Cir. 1994) (eyewitness testimony sufficient for government's burden of proof even if no firearm is recovered).

### B. *Grounds for New Trial*

■■ The Federal Rules of Criminal Procedure provide that a court may grant a defendant's motion for a new trial "if required

228

in the interest of justice." FED. R. CRIM. PRO. 33. The burden is on the defendant to show that a new trial ought to be granted. WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL, 2D, § 551 (1982). Any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial. *Id.*, § 556.

Mr. Lake contends that because the government did not produce the "rough notes'" of a government agent who did not testify, the testimony of "every government witness should have been stricken." He also asserts that a government agent who did testify must have had taken notes "because the statement of the witnesses were typed some days after the statements were made." Lake argues that failure to produce these alleged notes was also error, relying on *United States v. Ramos*, 27 F.3d 65 (3d Cir. 1995) and *United States v. Ammar*, 714 F.2d 238 (3d Cir. 1983).

■ In *Ammar* the court stated that the government was required to preserve rough drafts of agents' reports. 714 F.2d at 259. However, Ramos made clear that failure to follow this rule did not automatically mean a defendant's conviction had to be reversed. 27 F.3d at 68 ("we did not imply a rule which would automatically preclude evidence based upon destroyed rough notes, without regard for other considerations.") Indeed, the court in Ramos concluded that the rough notes destroyed by the testifying agents did not preclude the agents from testifying since the notes contained neither Jencks[2] material or *Brady*[3] material, and the notes were destroyed in good faith. In this case, the officer who had taken rough notes and destroyed them did not testify at the trial. The government agent who did testify had no notes to produce. (Tr. 71, 75, 116, 85.) Defendant's argument that the testifying agent must have had notes because witness statements were typed does not negate the agent's testimony to the contrary and surely can not provide sufficient ground for a new trial.

■ Mr. Lake also asserts that this Court's instruction on Count II was inadequate because the Court did not list the elements of carjacking. This contention is absurd. The Court fully instructed on

[2] 18 U.S.C. § 3500.

[3] *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963).

the elements of carjacking in its instruction on count one. This complete carjacking instruction was then incorporated into the instruction on count two when the Court instructed that the government had to prove that Lake "committed the crime of carjacking as charged in the indictment charged in Count I" and that "during and in relation to the commission of that crime, Mr. Lake knowingly used or carried a firearm." (Tr. 97.) The count two instruction was sufficient because the jury was told that the crime of carjacking must first be determined, referring the jury to count one and the elements necessary to convict on count one.

## III. Conclusion

Because this Court finds there was no reversible error committed during the trial, Mr. Lake is not entitled to a new trial. Because the evidence was sufficient, there are no grounds for a judgment of acquittal. An appropriate order is attached.

ENTERED this 7th day of July, 1997.

### ORDER

For the reasons set forth in the accompanying memorandum, it is hereby
ORDERED that defendant's motion for a judgment of acquittal or in the alternative for a new trial is DENIED.

ENTERED this 7th day of July, 1997.