**VINCENT GEORGES, JR. and MEADE LAWRENCE,**
**Appellants**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Crim. App. Nos. 1996/193 & 1996/212

T.C. Crim. Nos. F239/1994 & F241/1994

District Court of the Virgin Islands

Div. of St. Thomas and St. John

November 18, 1997

159

GEORGE H. HODGE, JR., ESQ., St. Thomas, U.S.V.I., *for Appellant Georges*

VINCENT F. FRAZER, ESQ., St. Thomas, U.S.V.I., *for Appellant Lawrence*

MAUREEN PHELAN CORMIER, ESQ. (Assistant Attorney General), St. Thomas, U.S.V.I., *for Appellee*

MOORE, *Chief Judge*, FINCH and ANDREWS, *Judges*

## OPINION OF THE COURT

PER CURIAM

### ISSUES

Appellants raised several issues on appeal,[1] but, at this juncture, the Court will only consider whether the trial court erred in not conducting a hearing to investigate allegations of juror misconduct contained in the notarized letter of juror, Gemma L. Crabbe-Whyte ["Mrs. Whyte"]. For the reasons stated herein, we will remand this matter for a hearing on the issue of juror misconduct.

### FACTS

On the morning of July 14, 1994, Mr. Ramesh Daryanani, owner of the Ashvind Jewelry Store ["the store"], was robbed at gunpoint by men wearing face masks and gloves. The robbers fled with diamonds and gold jewelry valued at approximately Seventy

---

[1] The other issues raised are: 1) whether the trial court erred in allowing the testimony of co-defendant Jaime Abbot; 2) whether the evidence against Vincent Georges was sufficient to sustain a conviction beyond a reasonable doubt; 3) whether the 20 year sentence imposed on Vincent Georges was excessive for a first time conviction; 4) whether the trial court erred in not granting a new trial on the basis of juror misconduct; 5) whether the trial court misapplied *Baston v. Kentucky*, 476 U.S. 79 (1986), in the defense's exercise of its peremptory challenges; 6) whether the trial court erred in not allowing the opinion testimony of Officer Enid Edwards; and 7) whether Meade Lawrence's conviction for both robbery and possession of stolen goods violates the double jeopardy clause.

Thousand Dollars ($70,000). Four men were later apprehended by the police.[2]

■ Vincent Georges, Jr. ["Mr. Georges" or "appellant"] and Meade Lawrence ["Mr. Lawrence" or "appellant"] were co-defendants in a jury trial which commenced on March 25, 1996. At the outset, we note that pertinent portions of the trial transcript pertaining to voir dire were not submitted to this Court. As such, we rely upon those facts which can be gleaned from the record.

The Government argues that during the initial voir dire the court adequately questioned prospective jurors as to the extent and effect of media reports on them. (Appendix ["App."] of the Government at 12.) According to the Government, the court asked during the initial voir dire "whether anyone had read about the case in 'the press or printed media or electronic media.'" (Brief of the Government at 12.) Eleven jurors indicated that they had, and of the eleven, ten indicated that despite those reports, they could render a verdict without being influenced by what they had read or heard, and the eleventh juror was excused. (*Id.*) The trial court then stated:

> Also, I'll just say that there was also some other things mentioned in the Daily News about one of the defendants continuously about what his parents or father does. Is there anyone who have heard subsequently, anything about any of those defendant[]s in the printed media?
>
> We [heard] first about this particular alleged incident on July 14. We now going to any subsequent story about anything else the Daily News might have printed about Mr. Meade Lawrence or Mr. Vincent Georges, Jr. Anyone have read or heard anything more about these gentlemen?

(*Id.*) Seven jurors responded to this question (six of whom had also responded to the first question), and the court asked if they could render a verdict despite these media reports. (*Id.*) The Government contends that Mrs. Whyte and at least one other juror indicated

---

[2] The police apprehended Jaime Abbott, Myron Chatteram, Vincent Georges, Jr. and Meade Lawrence in connection with the robbery.

during the initial voir dire that they "had read articles about the defendants and the robbery," and Mrs. Whyte indicated that she had also read subsequent articles pertaining to the alleged shooting by Mr. Georges. (*Id.* at 13.) At trial no evidence was presented regarding the alleged shooting. Vincent Georges, Jr. and Meade Lawrence were found guilty of all seven (7) charges against them.[3]

Approximately two weeks after the verdict was rendered in this case, Mrs. Whyte wrote the following letter to the Court:

> I was a juror on the case of the Government of the Virgin Islands []vs. Meade Lawrence and Vincent Georges, Jr. I'm writing you to voice my concerns on the case.
>
> During deliberations it was quite apparent that several jurors has preconceived conceptions about the defendants and the case. I feel the jurors ability to reach a fair verdict was clouded by those conceptions.
>
> In my mind, I felt there was several doubts in the Government's case. I tried to get this point across to my fellow jurors, but they were too pre-occupied with other issues that should not have been any concern to us. For example, they wanted to know why did Vincent George, Jr. shoot after Meade Lawrence and his family if they weren't guilty of said crime. They also made a reference to the fact that the two defendant's family weren't sitting together during the trial. This apparently indicated to them that the two families were feuding because of the case. Several jurors even mentioned that one of the defendants acted and looked like he didn't care or had no remorse for committing the crime. They even went as far as assuming what witnesses may have said to questions

---

[3] The seven (7) charges as stated in the court's July 30, 1996 Judgment are as follows:

**Vincent Georges, Jr.**
Count I: First Degree Robbery, 14 V.I.C. § 1862(2)
Count II: Unauthorized Possession of a Firearm, 14 V.I.C. § 2253(a)
Count III: Unlawful Possession of Stolen Property, 14 V.I.C. § 2101(a)

**Meade Lawrence**
Count IV: First Degree Robbery, 14 V.I.C. § 1862(2)
Count V: Unauthorized Possession of a Firearm, 14 V.I.C. § 2253(a)
Counts VI & VII: Unlawful Possession of Stolen Property, 14 V.I.C. § 2101(a)

which drew objections. The jurors didn't use just the evidence in this case to convict the defendants.

As it was twelve of us and I was just about the only one to see this effect and with all the friction, I felt compelled to agree with the majority. My conscience is not at ease with this decision because I don't feel the Government had sufficient evidence for us to convict the defendants. This decision may cost two young men several years of their lives and myself, a guilt trip for the rest of my life.

I read about the defendants appealing their convictions and felt this was the best time for me to come forward with my concerns. I ask that you take my letter into consideration when considering the appeals.

(Appendix of Appellant Georges at 8-9.)

Upon receiving this letter, the trial court informed counsel and a conference was held to discuss its contents, and appropriate responses. In light of this letter, appellants moved for judgments of acquittal or, in the alternative, for new trials. The trial court considered the contents of the letter and the impact on the jury, and determined that extraneous information had not been considered by the jury, and that FED. R. EVID. 606(b)[4] prohibited the court from inquiring further into Mrs. Whyte's allegations. On June 25, 1996, the court ordered that appellants' motions for judgment of acquittal, or in the alternative, for new trials on the basis of juror misconduct and insufficiency of the evidence were denied. Appellants' convictions are now on appeal.

---

[4] FED. R. EVID. 606(b) provides:

INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

## DISCUSSION

### A. Jurisdiction and Standard of Review

■ This Court has appellate jurisdiction to review judgments and orders of the Territorial Court in all criminal cases in which the defendant has been convicted, other than on a plea of guilty. V.I. CODE ANN. tit. 4, § 33 (Equity 1967, Michie Supp. 1997). We review a trial court's decision not to conduct a hearing on the issue of juror misconduct for abuse of discretion. *See Government of the V.I. v. Weatherwax*, 29 V.I. 410, 421 (3d Cir. 1994) (*citing Government of the V.I. v. Dowling*, 814 F.2d 134, 138 (3d Cir. 1987)); *U.S. v. Console*, 13 F.3d 641, 666-67 (3d Cir. 1993).

### B. Jury Misconduct

Approximately two weeks after trial, the court was informed that jurors had considered media reports, and other information outside of the record in reaching a determination of guilt. Of the allegations made by Mrs. Whyte, the most troublesome is that the jurors considered a newspaper article which stated that Mr. Georges had shot at Mr. Lawrence and his family. Mrs. Whyte suggests that the jurors may have concluded that Georges would not have shot at Lawrence if he (Georges) was not guilty.

Appellants contend that this statement regarding the shooting was extraneous. Appellants further argue that once possible juror misconduct was brought to the attention of the trial judge, failure to conduct a voir dire of the jurors to examine potential prejudice to appellants constituted reversible error, and a new trial was warranted. Although conceding at oral argument that the statement regarding the shooting by one defendant at the other concerned matters which were extraneous to the evidence introduced during trial, the Government nevertheless argues that the trial court did not err in determining that these statements required neither a voir dire nor a new trial.

■ "Extraneous" is defined as

existing on or coming from the outside; having no relevance. MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 413 (10th ed. 1996). 'Extraneous influence' has been construed to cover publicity received and discussed in the jury room,

consideration by the jury of evidence not admitted in court, and communications or other contact between jurors and third persons, including contacts with the trial judge outside the presence of defendant and his counsel. By contrast, evidence of discussions among jurors, intimidation or harassment of one juror by another, and other intra-jury influences on the verdict is within the rule, rather than the exception, and it is not competent to impeach a verdict. *U.S. v. Williams-Davis*, 821 F.Supp. 727, 733 (D.D.C. 1993) (*citing Government of the Virgin Islands v. Gereau*, 523 F.2d 140, 149-50 (3d Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119 (1976)).

The trial court determined that information about the shooting was not extraneous, and relied upon FED. R. EVID. 606(b) in determining that further inquiry into Mrs. Wright's allegations was prohibited. This Court finds that any information about the alleged shooting by Mr. Georges, since it was not introduced into evidence at trial, was extraneous. We, therefore, disagree with the lower court's interpretation of RULE 606(b).

■ The Government also argues that "[t]he proper time to ensure that jurors are not aware of prejudicial extraneous information is before trial, not afterward." (Brief of the Government at 15.) This argument completely ignores the fact that conduct which can prejudice a defendant may arise at any point during trial. The initial voir dire is the first step in weeding out those who may exhibit prejudice either for or against a defendant, but it is not the last occasion to question or challenge jurors as the Government suggests. (*See* Brief of the Government at 15-17.) If a potential juror declares that he or she will be impartial despite any knowledge about the case, at that point, the court, without more, can give the juror the benefit of any doubt insofar as impartiality. We note, however, that a juror's declaration during voir dire that he or she will be able to disregard media reports and judge a defendant impartially, does not mean that if the court is apprized of conduct which has the potential to be prejudicial, it must ignore that information simply because of declarations made during voir dire.

165

The trial court did not conduct a hearing to question any of the jurors, but based upon the contents of the letter denied appellants' motions for judgment of acquittal stating:

> The Court cannot hold a hearing on the merits of the juror's representation. First, the Court is mindful of RULE 606 of the FEDERAL RULES OF EVIDENCE. . . .
>
> Significantly, the content of the letter does not state nor address "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Rather the letter addresses matters which the Rule expressly prohibits the court from inquiring about and matter [sic] which jurors are specifically prohibited from testifying about.
>
> . . . .
>
> The Court may only allow testimony as to whether the jury was exposed to extraneous prejudicial information or outside influence. But jurors may not testify about the manner in which such experience affected the deliberative process.
>
> . . . .
>
> Since the jury in this case had not considered prejudicial extra-record information, RULE 606(b) prohibited an inquiry into the juror's statement.

(Appendix for Appellant Lawrence at 6-10 (emphasis in original).)

This Court notes that

> [p]ost-verdict inquiries into juror misconduct must balance the defendant's Sixth Amendment right to a fair trial by an impartial jury with the long-established policy, rooted in the common law, prohibiting the admission of juror testimony to impeach a jury verdict. Among the purposes for this strong policy are the promotion of finality of jury verdicts, the discouragement of harassment of jurors, the reduction of incentives for jury tam-

166

pering, and the encouragement of free and open discussion among jurors.

*U.S. v. Williams-Davis*, 821 F.Supp. 727, 733 (D.D.C. 1993) (*citing Government of the Virgin Islands v. Gereau*, 523 F.2d 140, 149-50 (3d Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119 (1976)).

FEDERAL RULES OF EVIDENCE 606(b) permits the impeachment of verdicts by inquiry into what happened in terms of the jury room, but a juror may not testify about his mental processes or about the effect of anything upon his or another juror's mind as influencing him to assent to or dissent from a verdict or indictment. As noted in *Williams-Davis*, trial "courts have broad discretion in selecting the appropriate procedures to determine whether colorable allegations of juror misconduct have been made, and, if so, whether the requisite showing of prejudice has been met." 821 F.Supp. at 734. Since this matter has not been widely litigated in this jurisdiction, we look to other jurisdictions for guidance with the knowledge that RULE 606(b) "has given rise to substantial differences of opinion." FED. R. EVID. 606 advisory committee's note.

■ The general rule in this jurisdiction is that "[p]rejudice should not be presumed; but when juror misconduct is coupled with trial court's failure to hold voir dire to determine the outcome of the misconduct on the jury function, proof of actual prejudice is excused and a new trial is warranted." *U. S. v. Weatherwax*, 29 V.I. 410 (3d Cir. 1994) (*citing U.S. v. Resko*, 3 F.3d 684, 695 (3d Cir. 1993)). To impeach a jury verdict, a defendant must first establish the existence of adequate grounds to attack the verdict and come forward with competent evidence with which to do so. *Gereau*, 523 F.2d at 148. Once this burden is met, a defendant still is not entitled to a new trial unless there is some further showing of prejudice from the misconduct of the jury. *Id.* A jury verdict will only be upset when extraneous influences may have improperly influenced the verdict. *U.S. v. Campbell*, 684 F.2d 141, 151 (D.C. Cir. 1982). We note, as did the Second Circuit Court of Appeals,

> that [t]he touchstone of decision in a case such as we have here is thus not the mere fact of infiltration of some molecules of extra-record matter . . . but the nature of what has been infiltrated and the probability of prejudice.

167

*U.S. v. ex rel Owen v. McMann*, 435 F.2d 813, 818 (2d Cir 1970), *cert. denied*, 402 U.S. 906, 91 S.Ct. 1373 (1971). There is no litmus test for making such a determination. *Id*.

On remand, the trial court will have to decide whether there is a "reasonable possibility that the extrinsic material could have affected the verdict" which would justify a new trial. *U.S. v. Halbert*, 712 F.2d 388, 389 (9th Cir. 1983) (finding that although it is preferable to conduct an evidentiary hearing on the issue of juror misconduct, the district court was correct in refusing to hold such a hearing where it knew the exact scope and nature of the newspaper article and the extraneous information). *Cf. U.S. v. Bagnariol*, 665 F.2d 877, 885 (9th Cir. 1981) (holding that the "trial court, upon learning of a possible incident of juror misconduct, must hold an evidentiary hearing to determine the precise nature of the extraneous information"). In *U.S. v. Moon*, the court found that the trial judge need not hold a hearing when there is no "clear, strong, substantial and incontrovertible evidence . . . that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant." *Moon*, 718 F.2d 1210, 1234 (2nd Cir 1983). Once the defendant has established the likelihood of prejudice, the burden shifts to the government to "rebut the showing of prejudice by demonstrating that the misconduct was harmless to the defendant." *Williams-Davis*, 821 F.Supp. at 734. If a hearing is found to be appropriate, "the judge may, but need not, question all the jurors," and the "judge may, but need not, permit counsel to question and cross-examine jurors." *Williams-Davis*, 821 F.Supp. at 734 (citations omitted). Individual voir dire is "the preferred method to determine 'what extra-record information was conveyed [to the jury] and the manner of its conveyance.'" *U.S. v. Small*, 891 F.2d 53, 56 (3d Cir. 1989) (*quoting Government of the Virgin Islands v. Dowling*, 814 F.2d 134, 139-40 (3d Cir. 1987)).

This Court finds that the juror's statement regarding the shooting between Mr. Georges and Mr. Lawrence meets the evidentiary burden to warrant further inquiry by the court to determine whether this statement could have affected the jury's verdict. *See Williams-Davis*, 821 F.Supp. at 736.

168

**CONCLUSION**

For the above-stated reasons, the trial court must conduct a post-verdict hearing to determine whether there was juror misconduct which requires a new trial. We, therefore, remand this matter to the trial court for a hearing on whether the extraneous information that Georges had shot at Lawrence and his family was considered by the jury, and, if so, whether that information could have affected the verdict to the extent that a new trial is required.

DATED this 18th day of November, 1997.

**ORDER OF THE COURT**

AND NOW this 18th day of November, 1997, having considered the arguments and submissions of the parties; and for the reasons set forth in the Court's accompanying Opinion of even date, it is hereby

ORDERED AND ADJUDGED that this matter be, and is hereby, remanded to the trial court for a hearing on whether extraneous information was considered by the jury, and, if so, whether that information was prejudicial to appellants.