Vincent GEORGES, Jr., and Meade
Lawrence, Appellants,

v.

GOVERNMENT OF THE VIRGIN
ISLANDS, Appellee.

Nos. CRIM. A.1996–193, 1996–212.

District Court, Virgin Islands,
Appellate Division,
D. St. Thomas and St. John.

Considered Oct. 13, 1999.

Filed Sept. 14, 2000.

George H. Hodge, Jr., Thomas, VI, for Appellant Georges.

Vincent F. Frazer, Thomas, VI, for Appellant Lawrence.

Maureen Phelan Cormier, Assistant U.S. Attorney, St. Thomas, VI, for Appellee.

Before: RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and MARIA M. CABRET, Presiding Judge, Territorial Court of the Virgin Islands, Division of St. Croix, Sitting by Designation.

## OPINION OF THE COURT

PER CURIAM.

### I. INTRODUCTION

Appellants Vincent Georges, Jr. ["Georges"] and Meade Lawrence ["Lawrence"] appeal their convictions for first degree robbery, unauthorized possession of a firearm, and unlawful possession of stolen property. On September 24, 1997, the Appellate Division heard argument and remanded on the single issue of the trial court's failure to investigate allegations of jury misconduct and use of extraneous information by the jury. *See Georges v. Government of Virgin Islands*, 38 V.I. 159, 986 F.Supp. 323 (D.V.I.App.Div.1997) ["*Georges I* "]. The Territorial Court held an evidentiary hearing ["evidentiary hearing"] on this issue and found no evidence to support either allegation. *See Government v. Georges*, 38 V.I. 146, 147, 1998 WL 182816, at *1 (Terr.Ct.V.I.1998) ["*Georges II* "]. On this second appeal, Georges contends that the trial judge's findings of fact during the evidentiary hearing were clearly erroneous, and Lawrence claims that the delay in holding the evidentiary hearing violated his Fifth Amendment right to due process.[1] We also consider and decide

---

1. The Due Process Clauses of both the Fifth and Fourteenth Amendments of the Constitu-

tion are made applicable to the Virgin Islands by § 3 of the Revised Organic Act of 1954, 48

the issues which were briefed and argued on September 27, 1997, but were not addressed in *Georges I.* We will affirm.

## II. FACTUAL AND LEGAL BACKGROUND

### A. The Criminal Trial and Convictions

On the morning of July 14, 1994, Lawrence, Georges, and two other men, Jaime Abbott ["Abbott"][2] and Myron Chateram ["Chateram"], armed themselves with firearms and set out to rob Ashvind Jewelry Store ["store"]. Three of the men entered the store wearing face masks and gloves, pointed guns at the head of the store's owner, Ramesh Daryanani ["Daryanani"], and forced him to open a showcase. The fourth robber stood watch in the doorway of the store. One of the robbers cut himself when he smashed another showcase with his gun and left blood in the store. The robbers then fled in a Suzuki jeep in the direction of Frenchman's Reef with diamonds and gold jewelry valued at approximately seventy thousand dollars.

The four men were later spotted in the Sea View Hill area by a citizen who called the police to report their suspicious behavior, and that she had seen them changing out of black clothing. The police arrived and apprehended Lawrence, who had a cut on his hand, and Abbott. One of the officers at the scene was Captain Vincent Georges, Sr. ["Captain"]. Upon being questioned, Abbott and Lawrence told the Captain that the person who had driven them was his son, Vincent Georges, Jr. The other officer on the scene then informed the Captain that she had seen his son driving nearby on Donkey Hill just a few minutes before. Officers put out an APB for Georges, who was stopped and arrested later that day driving a Pontiac LeMans along the Whymer Highway.

When the police searched the area around Sea View Hill, they found the stolen, and now abandoned, Suzuki jeep, which had blood on the door panel and seats. They also found bloody gloves in the nearby bushes. The blood later proved to be that of Lawrence. Expert evidence indicated that there was a one–in–120–million chance that the blood was *not* Lawrence's. The police also found a .38 caliber firearm, black clothing, and a duffel bag containing the stolen jewelry and guns in the bushes on Sea View Hill, and glass from the broken showcase in the LeMans that Georges was driving at the time of his arrest.

The jury returned guilty verdicts on all seven charges, as stated in the court's July 30, 1996 Judgment. Georges and Lawrence were each convicted of first degree robbery (14 V.I.C. § 1862(2)), unauthorized possession of a firearm (14 V.I.C. § 2253(a)), and unlawful possession of stolen property (14 V.I.C. § 2101(a) (two counts for Lawrence)).

### B. The Allegation of Jury Misconduct

Approximately two weeks after the jury returned its verdict, one of the jurors, Mrs. Gemma Crabbe–Whyte ["Crabbe–Whyte"], wrote to the trial judge about the fairness of the jury's verdict and what she thought was misconduct by her fellow jurors. On June 25, 1996, without an evidentiary hearing, the judge denied the appellants' motions for judgment of acquittal or, in the alternative, for a new trial on the basis of juror misconduct and insufficiency of the evidence. Appellants included this decision in their first appeal.

On September 24, 1997, this Court heard argument on the limited issue of whether the Territorial Court erred in not conducting a hearing to investigate allegations of

---

U.S.C. § 1561. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1994), *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73–177 (1995 & Supp.2000) (preceding V.I. CODE ANN. tit. 1).

2. Jaime Abbott's signed confession and testimony on behalf of the government corroborates the recitation of facts.

juror misconduct contained in the notarized letter of Ms. Crabbe–Whyte. The Court considered all of her allegations and found only one to require inquiry of the jurors. Accordingly, on November 18, 1997, the Court remanded the case for the trial judge to determine Ms. Crabbe–Whyte's claim that the jurors considered a news article in *The Daily News* that alleged that Georges had discharged a firearm at Lawrence while they both were out on bail before trial. Mrs. Crabbe–Whyte had suggested that the jurors may have concluded that Georges would not have shot at Lawrence if Georges were not guilty. The Court concluded that Ms. Crabbe–Whyte's statement regarding the shooting between Mr. Georges and Mr. Lawrence was "extraneous information" under Rule 606(b) of the Federal Rules of Evidence. The Court, therefore, "remand[ed] this matter to the trial court for a hearing on whether the extraneous information that Georges had shot at Lawrence and his family was considered by the jury, and, if so, whether that information could have affected the verdict to the extent that a new trial was required." *See Georges I*, 38 V.I. at 164, 986 F.Supp. at 326.[3]

On remand, the trial judge subpoenaed and heard the testimony of all twelve jurors and three alternates. The court and counsel questioned each juror about each of Mrs. Crabbe–Whyte's allegations, even those allegations that were not within the scope of our remand. On the issue of the media reports of the shooting, Crabbe–Whyte asserted in her sworn testimony that the jurors discussed the subject once, in casual conversation, for a few minutes in which "everyone talked about it." *Georges II*, 38 V.I. at 150, 1998 WL 182816, at *2. She further asserted that the conversation lasted approximately two to three minutes, and the discussion occurred before jury deliberation.

From his examination of the jurors and alternates, the trial judge, however, concluded that

Crabbe–Whyte's averment is overwhelmingly contradicted by the other jurors. Of the eleven (11) other jurors, eight (8) said the subject of Georges shooting at Lawrence or Lawrence's family members was never discussed either before or during jury deliberation. The other three (3) jurors said they did not remember the subject being mentioned or discussed either before or during jury deliberation. All three (3) alternate jurors testified that the subject was never discussed. Importantly, three (3) jurors, Samuel Edwards, Erica Benjamin–Henry, Ester Rose Benjamin and one (1) alternate juror, Lisa Hood, testified that the first time they heard anything about the alleged shooting incident was after the verdict and when the jury had been discharged from the case. Juror Samuel Edwards and Alternate Juror Lisa Hood further contended that the first time they heard about any shooting involving the defendants were when they were being questioned by the Court during the hearing. All four (4) jurors volunteered their statements during their responses to specific questions.

It is noteworthy that Crabbe–Whyte indicated at the voir dire proceeding that she had read news articles pertaining to the alleged shooting.

Accordingly, why Crabbe–Whyte recalled certain extraneous matters being discussed, while others who were present in the same room with her and who were part of the same group, contend that they never discussed or can not recall discussing any such matters is perplexing to the Court. The evidence contradicting Crabbe–Whyte's assertion is irrefutable. Similarly, the evidence

---

**3.** The trial judge framed the issue on remand as "[w]hether extraneous prejudicial information was improperly brought to the jurors' attention or was discussed by them, before or during deliberation, which did or could have adversely influenced the jurors' deliberation or could have contaminated the jury's guilty verdicts." *See Georges II*, 38 V.I. at 147, 1998 WL 182816, at *1.

from the hearings is totally devoid of any corroboration of either Crabbe–Whyte's testimony or her written allegations. The Court concludes, therefore, that no discussion ever occurred before or during jury deliberation, concerning Georges shooting at or discharging a firearm at Lawrence or at Lawrence's family members.

*Id.,* 38 V.I. at 151, 1998 WL 182816, at *2, *3.

After addressing the other three Crabbe–Whyte allegations that were not within the scope of our remand, the trial judge ultimately concluded that

there was no extraneous prejudicial information that was brought to the juror's attention or discussed by them either before or during deliberation.... [T]here is no evidence of jury misconduct or of jurors considering improper or extraneous factors in arriving at their guilty verdicts.... [T]here is no reasonable possibility that any extraneous prejudicial material could have affected the verdicts in this case.

*Id.,* 38 V.I. at 156, 1998 WL 182816, at *6.

Mead and Lawrence challenge the Territorial Court's conclusions on remand, asserting that:

(1) the trial judge's findings of facts at the evidentiary hearing were clearly erroneous, and a new trial is barred by the Double Jeopardy Clause of the Fifth Amendment; and

(2) the trial court's delay of over twenty months before holding the evidentiary hearing denied Lawrence due process.

We also resolve the remaining issues raised by appellants, namely that:

(1) the trial court erred in permitting co-defendant Jaime Abbott to testify against them because the testimony was obtained in violation of Abbott's Constitutional rights;

(2) the evidence against Georges was insufficient to sustain a conviction beyond a reasonable doubt;

(3) Georges' twenty-year sentence was excessive for a first-time offender;

(4) the trial court misapplied *Batson v. Kentucky* to Lawrence's exercise of his peremptory challenges;

(5) the trial court erred by not allowing Officer Enid Edwards to give her opinion of co-defendant Abbott's character for truthfulness; and

(6) Lawrence's conviction for both robbery and possession of stolen goods violated the Double Jeopardy Clause of the Constitution.

### III. DISCUSSION—THE EVIDENTIARY HEARING

Georges challenges the trial judge's findings of fact. Lawrence alleges that the delay in holding the hearing violated Due Process.

### A. Evidentiary Findings Not Clearly Erroneous

Georges argues that this tribunal should reverse the trial court's evidentiary findings that no extrinsic evidence or other jury misconduct prejudiced the verdict as clearly erroneous. Since we disagree, we do not reach the double jeopardy issue.

#### 1. *Standard of Review*

We review the trial court's findings of fact under the clearly erroneous standard. 4 V.I.C. § 33 ("Findings of fact shall not be set aside unless clearly erroneous."). We thus do not reverse a trial court's factual determination "unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Feddersen v. Feddersen,* 68 F.Supp.2d 585, 592 (D.V.I.App.Div.1999). A trial court's finding of fact is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction

that a mistake has been committed. *Marsh v. Marsh,* 33 V.I. 102, 105–06 (D.V.I.App.Div.1995). The appellate court should be especially deferential to the trial court's findings of fact based on witness credibility.

### 2. *Jurors Did Not Discuss Newspaper Article.*

 Here, the trial court examined the jurors and alternate jurors in person and concluded that no extrinsic evidence and no jury misconduct prejudiced Georges. Eight jurors denied that the topic was ever discussed, and another three jurors testified that they did not remember the subject being mentioned before or during jury deliberations. The judge found that the jurors did not consider a newspaper article about Georges shooting at Lawrence and his family, contrary to Ms. Crabbe–Whyte's statement that jurors discussed the article before deliberations for about two or three minutes. Viewing the evidence in the light most favorable to Georges, including the absence of corroborative testimony from the other eleven jurors and the trial judge's opportunity to observe the credibility of all the jurors as they testified, we cannot say that the court erred.[4]

### 3. *The Other Misconduct Claims Were Not Remanded.*

In addition to the allegation that the newspaper article about Georges shooting after Lawrence and his family influenced the jury's verdict, Ms. Crabbe–Whyte's letter made three other claims of· juror misconduct:

(1) the jurors "also made a reference to the fact that the two defendant's (sic) family (sic) weren't sitting together indicated that the two families were feuding because of the case;"

(2) "several jurors even mentioned that one of the defendants acted and looked

like he didn't care or had no remorse for committing the crime;"

(3) the jurors "even went as far as assuming what witnesses may have said to questions which drew objections."

(*See Georges II,* 38 V.I. at 148 n. 2, 1998 WL 182816, at *2 n. 2; Letter of Gemma L. Crabbe–Whyte.)

Since Rule 606(b) of the Federal Rules of Evidence prohibited any inquiry into these other three allegations, they deliberately were not included in the remand to the Territorial Court. A juror is prohibited from testifying about

any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether *extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.*

*See* FED R. EVID. 606(b) (emphasis added).

 Only the newspaper article fell within the "extraneous prejudicial information" or "outside influence" exceptions to the rule's prohibition. *See Government of the Virgin Islands v. Gereau,* 12 V.I. 213, 229–30, 523 F.2d 140, 148 (3d Cir.1975) (extraneous influence includes publicity received and discussed in the jury room, consideration of evidence not admitted in court, and contacts with third parties). Even if the seating of the Georges and Lawrence families in the courtroom and their possible feuding could be considered extraneous and prejudicial information, it happened in the courtroom for all to see and was not improperly brought to the jury's attention. Similarly, a defendant's

---

**4.** Where, as here, there are two permissible views of the evidence, the judge's choice between them cannot be clearly erroneous. *See*

*Linder and Assocs., Inc. v. Aetna Casualty and Surety Co.,* 166 F.3d 547, 551 (3d Cir.1999).

demeanor in front of the jury could hardly be considered either extraneous information or improperly brought to the jury's attention. Finally, speculation about what witnesses might have answered if objections had not been sustained cannot be considered either extraneous or prejudicial information, nor was it improperly brought to the jury's attention. *See Bradford v. Los Angeles*, 1994 WL 118091, at *5 (9th Cir. Apr.4, 1994) (finding no case to support the claim that consideration of stricken testimony constitutes "extraneous information"). Accordingly, even though the trial court included these three prohibited areas, they were not within the scope of our remand or properly raised by this appeal.[5]

### 4. *Prejudice and Double Jeopardy*

Since we agree with the trial court's determination that there was "no reasonable possibility that any extraneous prejudicial material could have affected the verdicts in this case," *see Georges II*, 38 V.I. at 156, 1998 WL 182816, at *6, there also was no reasonable possibility of prejudice, and the issue of double jeopardy does not arise.

### B. Delay in Holding Evidentiary Hearing

■ Lawrence argues that the approximately twenty-month delay from the time the trial court became aware of possible jury misconduct to the evidentiary hearing

5. We note only that the trial court concluded that (1) the jurors did not discuss the seating of the defendants' families, (2) the jurors commented on, but did not discuss the defendants' demeanor, and (3) whenever a juror mentioned a stricken matter, the other jurors immediately rebuked that juror and no further discussion of the stricken matter ensued. (*See Georges II*, 38 V.I. at 151–54, 1998 WL 182816, at *2–*4).

6. The closest analogous right, which both parties address, is the due process right to a speedy trial and appeal, with its four-factor balancing test: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right; and (4) prejudice to the

violated his right to due process. The record does not reflect that Lawrence raised this issue at the evidentiary hearing conducted on remand, so we may reverse the trial court's determinations only upon a finding of "plain error." *See United States v. Olano*, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Brown v. Government of the Virgin Islands*, 40 V.I. 141, 146 (D.V.I.App.Div.1998); FED. R. CRIM. P. 52(b). Here there is no plain error. Neither the government nor the appellant can cite to any authority for a due process requirement of a speedy posttrial hearing on alleged juror misconduct.[6] We, therefore, sustain the trial court, since there is nothing plain about an error involving an unrecognized right, even if we could find such an error in this record.

### IV. DISCUSSION—ISSUES REMAINING FROM INITIAL APPEAL

Georges and Lawrence both appeal the trial court's decision to admit testimony of co-defendant Abbott. Georges further contends that the evidence against him was insufficient to sustain a guilty verdict and that his sentence was excessive. Lawrence further asserts that the trial court misapplied the *Batson* rule to his peremptory challenges and erred by not allowing Officer Edwards to testify, and that his conviction violates the Double Jeopardy Clause of the Constitution.

defendant. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Applying this test, we would find no violation. The trial judge acted promptly upon receiving the letter. The vast majority of the delay was taken up by the appeal process, which was not unreasonable. Lawrence claims that the jurors' failing memories and imprecise recollections after a delay of twenty months prejudiced his claim of jury misconduct. The record belies the claim, however. For example, only two jurors didn't think that they had discussed the Georges shooting either before or during deliberations. The remaining jurors *were certain* that there had been no such discussion.

## A. Testimony of Co–Defendant Jaime Abbott

Appellants each argue that they have standing to assert a violation of co-defendant Jaime Abbott's Fifth Amendment rights where his own right to a fair trial was implicated, and that Abbott's written confession and in-court testimony were involuntary and should have been suppressed. The government responds that the appellants lack standing to assert Abbott's personal rights, that Abbott's confession and testimony were not coerced, and that the appellants waived the issue by failing to move to suppress the testimony before trial. *See* FED. R. CRIM. P. 12(b), (f).[7]

### 1. *Standard of Review*

Georges admits that his objection in the notice of a motion to suppress the testimony and confession of co-defendant Abbott was not timely made before trial, but that he nonetheless showed cause why the court should have granted him relief from waiver of the issue. Unfortunately, Georges does not include any portion of the trial transcript to confirm his efforts to show cause. Where the record does not reflect that the issue was raised before the trial court, we will reverse only upon a finding of plain error. *See Olano* at 731, 113 S.Ct. 1770.

### 2. *Standing To Raise Mistreatment of Co–Defendant*

 A defendant in a criminal case does not generally have the right to assert the constitutional rights of another person. *See Barrows v. Jackson,* 346 U.S. 249, 255, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); *Ne-*

*zowy v. United States,* 723 F.2d 1120, 1130 (3d Cir.1983). A reviewing court nevertheless may reverse a conviction based on evidence that rendered the trial fundamentally unfair. *See Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Barrows* at 257, 73 S.Ct. 1031. Similarly, evidence seized by investigative techniques so shocking that they violate the "universal sense of justice" may be suppressed. *See United States v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) (undercover agent's contribution of ingredient to illegal drug process did not violate fundamental fairness and was not shocking to universal sense of justice); *see also United States v. Voigt,* 89 F.3d 1050, 1064 (3d Cir.1996) ("the Court continues to recognize a due process claim premised upon outrageous law enforcement investigative techniques."). Therefore, appellants have standing to raise the alleged police mistreatment of co-defendant Abbott to the extent it may have affected the fairness of their own trial.

### 3. *No Plain Error*

The appellants have pointed to nothing in the record that should have made it obvious to the trial court that the police acted in an outrageous fashion. In any event, Abbott's claim of abuse by the arresting officers and improprieties in his written confession and *Miranda* advice of rights and waiver, falls far short of the kind of police conduct which could affect the fundamental fairness of a trial of his co-defendants. We accordingly hold that the trial court committed no plain error in admitting the testimony and confession of

---

**7.** Rule 12(b) of the FED. R. CRIM. P. states in relevant part:

> The following [motions] must be raised prior to trial:
>
> . . . .
>
> (3) Motions to suppress evidence;
>
> . . . .

Rule 12(f) of the FED. R. CRIM. P. states in relevant part:

> Failure of a party . . . to make requests which must be made prior to trial . . . shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

The Federal Rules of Criminal Procedure are applicable to the Territorial Court pursuant to TERR. CT. R. 7.

co-defendant Abbott.[8]

## B. Sufficiency of the Evidence

■ Georges argues generally that the facts do not sustain a conviction beyond a reasonable doubt. In reviewing the sufficiency of the evidence to support a conviction, the verdict of a jury must be sustained if, viewing the evidence in the light most favorable to the government, a reasonable mind could find the defendant guilty beyond a reasonable doubt of every element of the offense. *See United States v. Hilton Lake,* 37 V.I. 217, 222, 972 F.Supp. 328, 330 (D.V.I.App.Div.1997) (citing *United States v. Jenkins,* 90 F.3d 814, 817 (3d Cir.1996)).

Here, the testimony and physical evidence clearly linked both appellants to the crimes for which they were convicted. Viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the prosecution, a reasonable juror could have found the defendants guilty of the crimes charged. We, therefore, cannot overturn the verdict.

## C. Excessive Sentence

■ Georges asserts that his twenty-year sentence was excessive for a first-time conviction, i.e., that the maximum sentence of twenty years which he received under 14 V.I.C. § 1862(2) is not proportionate for a first-time offender. The government argues that the sentence falls squarely within the statutory guidelines, and that the court was guided by the findings in the pre-sentence report. The standard of review applied to the sentence imposed by a trial court is abuse of discretion. *See Government v. Grant,* 21 V.I. 20, 24 (D.V.I.App.Div.1984).

■ In general, the severity of a sentence is not reviewable so long as it falls within the statutory limits. *See Chick v.*

*Government,* 941 F.Supp. 49, 51 (D.V.I.App.Div.1996). Georges' emphasis that his first-time offender status should have reduced his sentence considerably in essence raises a claim of failure to individualize the sentence. In *Chick,* we noted that

> the exercise of a sound discretion ... requires consideration of all the circumstances of the crime, for "the belief no longer prevails that every offense in a like legal category calls for identical punishment...." In discharging his duty of imposing a proper sentence, the sentencing judge is authorized, if not required, to consider all of the mitigating and aggravating circumstances involved in the crime.

941 F.Supp. 49, 51 (D.V.I.App.Div.1996) (citing *Williams v. Oklahoma,* 358 U.S. 576, 584–85, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959) (sentence imposed fell within the possible range of punishment and therefore did not violate petitioner's due process rights)). We find that Georges' sentence was not extreme and "grossly disproportionate" to the crime. *See Harmelin v. Michigan,* 501 U.S. 957, 962, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (discussing Eighth Amendment proportionality standard). Georges has pointed to nothing in the record that might even suggest that the judge did not consider all the relevant circumstances involved in the crime before imposing sentence. We, therefore, can find no abuse of discretion in the trial court's determination of Georges' sentence.

## D. Peremptory Challenges and *Batson*

Lawrence attempts to raise an issue on appeal about a challenge to the exercise of a peremptory strike of a juror and a claim that the trial judge misapplied *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (generally holding that exercise of peremptory challenge to ex-

---

**8.** Further reinforcing this conclusion is the fact that Georges could and did cross-examine Abbott, which gave the jury ample opportunity to assess the reliability of Abbott's testimony and confession.

clude juror on the basis of race is prohibited). Since this portion of jury selection apparently was conducted off the record, and Lawrence has presented us with nothing more than his bald assertion of error, there is nothing for this Court to consider.

### E. Opinion Evidence of Officer Edwards

 Lawrence alleges that the trial court erred by not allowing Officer Enid Edwards ["Edwards"] to give her opinion of co-defendant Abbott's character for truthfulness. The judge excluded the testimony based on the unreliability of Edward's memory. We review this evidentiary ruling under an abuse of discretion standard. *See Government ex rel. M.B.*, 33 V.I. 119, 909 F.Supp. 298 (D.V.I.App. Div. 1995); *see also Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 647 n. 1, 136 L.Ed.2d 574 (1997).

On the third day of trial, Lawrence sought to introduce Edwards' testimony that Abbott had recanted his confession in another case in which Edwards was involved. The judge ruled that unless documents were produced to support this claim, Edwards' testimony would not be allowed since the alleged recantation had occurred four years earlier in another case. Upon further investigation, neither the government's file nor the court's file of this other case contained such a recantation. Without any corroborating, official documentation, the court excluded the testimony, pursuant to Federal Rules of Evidence 403, because Edwards' four-year-old memory of this recantation was not sufficiently reliable and the prejudice outweighed its probative value. We can find no abuse of discretion in the trial court's ruling.

### F. Double Jeopardy

 Lawrence claims that by separate, but concurrent, sentences of twenty years for robbery in the first degree and five years for possession of stolen property, he has been punished twice for the same offense. The government contends that these two offenses are separate and distinct from each other, because concealing stolen property is a variation of possession that is not included in the offense of robbery.

The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. CONST. amend. V.[9] We agree that it protects against multiple punishments for the same offense,[10] which we have interpreted to mean that, " '[i]n the context of concurrent (rather than consecutive) prosecutions, the Clause only prohibits the government from seeking, and the courts from imposing, punishments exceeding legislative authorization.' " *Rabess v. Government*, 30 V.I. 348, 352, 868 F.Supp. 777, 780 (D.V.I.App.Div. 1994); *see also Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."). Since Lawrence's concurrent sentences do not exceed the maximum permissible sentence of twenty years on the count which carries the greatest maximum sentence, the Double Jeopardy Clause has not been violated.[11] Law-

9. The Double Jeopardy Clause of the Fifth Amendment of the Constitution is made applicable to the Virgin Islands by § 3 of the Revised Organic Act of 1954, 48 U.S.C. § 1561.

10. *See North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (no multiple punishments for same offense); *see also Carillo v. United States*, 38 V.I. 258, 995

F.Supp. 587 (D.V.I.App.Div.1998) (precluding separate sentences only).

11. *Accord United States v. Xavier*, 2 F.3d 1281, 1290 (3d Cir.1993) (remanding for general sentence on all counts for term not exceeding maximum permissible sentence on count which carries greatest maximum sentence) (citation omitted).

rence's claim that he is being punished twice for the same offense is without merit.

### V. CONCLUSION

Finding no error in the Territorial Court's determination that there was no jury misconduct or in the other issues raised by appellants, we will affirm the convictions and sentences of Vincent Georges, Jr. and Meade Lawrence. An order of even date follows.

### ORDER OF THE COURT

For the reasons set forth in the accompanying memorandum Opinion, it is hereby

**ORDERED** that convictions of Vincent Georges, Jr. and Meade Lawrence, and the sentences imposed thereon, are **AFFIRMED.**