**UNITED STATES of America**

v.

**Mario RIVERA, Appellant
at No. 09–3222**

Julian Joseph, Appellant
at No. 09–4415.

Nos. 09–3222, 09–4415.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) Jan. 10, 2011.

Filed: Jan. 25, 2011.

John M. Gallagher, Esq., Office of United States Attorney, Philadelphia, PA, for Plaintiff–Appellee.

James M. Polyak, Esq., Reading, PA, for Defendant–Appellant.

Before: SCIRICA, BARRY and VANASKIE, Circuit Judges.

OPINION OF THE COURT

SCIRICA, Circuit Judge.

On March 11, 2008, a grand jury in the Eastern District of Pennsylvania returned a 114–count superseding indictment charging sixteen people, including Julian Joseph

and Mario Rivera, with offenses including possession with intent to distribute cocaine base ("crack cocaine"). Most of those charged entered into guilty plea agreements. Joseph and Rivera were tried together, along with two other co-defendants. On April 8, 2009, a jury convicted Joseph of two counts of possession with the intent to distribute crack cocaine on October 20, 2007, and October 26, 2007, and convicted Rivera of one count of possession with intent to distribute five or more grams of crack cocaine on October 19, 2007.[1] The District Court sentenced Joseph to twenty-one months' incarceration, three years of supervised release, and a special assessment of two hundred dollars, and sentenced Rivera to sixty months' imprisonment, four years of supervised release, and a special assessment of one hundred dollars. Joseph and Rivera appeal, contending the evidence was insufficient to support their convictions.[2] We will affirm.[3]

## I.

The government presented considerable evidence at trial. Two witnesses were central to the government's case, Sean Rogers, and his common-law wife, Anna Baez. Rogers, with the assistance of Baez, managed a drug trafficking operation that sold crack cocaine in wholesale quantities to street dealers in Easton, Pennsylvania, and elsewhere, during the year prior to their arrests in January, 2008. In October and November 2007, pursuant to a court-ordered wiretap of

---

1. The grand jury had charged Joseph with eight counts of possession with intent to distribute crack cocaine and four counts of possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1). Rivera was charged with six counts of possession with intent to distribute crack cocaine and one count of possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1).

2. At the close of the government's case, Joseph and Rivera each made an oral motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, arguing insufficiency of the evidence. Fed.R.Crim.P. 29. These motions were denied. After trial, Joseph renewed his motion for judgment of acquittal under Rule 29, which the Court denied. Because Joseph properly renewed his challenge to the sufficiency of evidence, we evaluate Joseph's "convictions in order to ascertain whether, when viewing the evidence presented at trial in a light most favorable to the government, any rational trier of fact could have found the essential elements of the offenses charged" beyond a reasonable doubt, *United States v. Anderson*, 108 F.3d 478, 480 (3d Cir.1997), as discussed *infra*. Conversely, Rivera did not "renew[ ] the motion for judgment of acquittal at the close of the evidence or by filing a timely post-verdict motion,"

*United States v. Wright–Barker*, 784 F.2d 161, 170 (3d Cir.1986), *superseded on other grounds by statute*, *United States v. Martinez–Hidalgo*, 993 F.2d 1052 (3d Cir.1993), and instead moved for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. Rivera did not properly preserve the issue of evidentiary sufficiency of his conviction for appeal as a Rule 33 motion is "an inappropriate means of raising a challenge to the sufficiency of the evidence...." *Wright–Barker*, 784 F.2d at 171 n. 9. "Accordingly, the alleged insufficiency of the evidence with respect to the essential elements of the offense must constitute plain error in order to warrant reversal." *Anderson*, 108 F.3d at 480; *see United States v. Barel*, 939 F.2d 26, 37 (3d Cir.1991). However, because the government did not make this argument in its brief, because Rivera argued after the jury verdict that the evidence was insufficient to support conviction—albeit improperly styled as a Rule 33 motion—and because the evidence supports the conviction under either standard, we will examine the record as a whole "to see if the government produced substantial evidence sufficient to prove th[e] element[s] of its case beyond a reasonable doubt." *Barel*, 939 F.2d at 37.

3. The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

Rogers' cellular telephone, investigators intercepted and recorded more than 1,300 calls in which Rogers or Baez made arrangements to purchase powder cocaine and crack cocaine from a New York supplier and sell crack cocaine to customers for street-level resale. Investigators also made controlled purchases of crack cocaine from Rogers and conducted surveillance of Rogers and Baez during multiple drug sales. Many of these transactions were videotaped.

Rogers and Baez took telephone orders for, and delivered to customers, crack cocaine in amounts from one-eighth of an ounce (3.5 grams) to one ounce for the purpose of repackaging and resale in smaller amounts. Rogers distributed at least 27.5 kilograms of crack cocaine—approximately five hundred grams a week—during the one-year period. A search of Rogers' residence on January 23, 2008, uncovered five hundred grams of powder cocaine and one hundred grams of crack cocaine.

Rogers and Baez pleaded guilty and testified for the government as cooperating witnesses. They testified Rogers sold crack cocaine to Joseph and Rivera for redistribution. After the presentation of this and other evidence, including circumstantial evidence consisting of telephone records, wiretapped conversations, and video recordings, the jury returned guilty verdicts convicting Joseph and Rivera.[4]

## II.

When reviewing whether a jury verdict is based on legally sufficient evidence, we view the evidence in the light most favorable to the government and must sustain the verdict "if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir.1999); *see United States v. Cunningham*, 517 F.3d 175, 177 (3d Cir.2008). In order to determine whether there was sufficient evidence to uphold the convictions, we examine the "totality of the evidence, both direct and circumstantial, and must credit all available inferences in favor of the government." *United States v. Sparrow*, 371 F.3d 851, 852 (3d Cir.2004) (citation and internal quotation marks omitted). The standard is "particularly deferential," *United States v. Cothran*, 286 F.3d 173, 175 (3d Cir.2002) (citation and internal quotation marks omitted), when reviewing for sufficiency of evidence, and we do not reweigh the evidence or reevaluate the credibility of witnesses. *United States v. Jones*, 566 F.3d 353, 361 (3d Cir.2009). Accordingly, "a claim of insufficiency of the evidence places a very heavy burden on an appellant[,]" *United States v. Dent*, 149 F.3d 180, 187 (3d Cir.1998) (citation and internal quotation marks omitted), and a "finding of insufficiency should be confined to cases where the prosecution's failure is clear." *United States v. Smith*, 294 F.3d 473, 477 (3d Cir.2002) (citation and internal quotation marks omitted). We will consider Joseph's and Rivera's appeals *seriatim.*

## III.

■ In order to obtain convictions on the counts charged against Joseph, the Government had to prove beyond a reasonable doubt that Joseph knowingly or intentionally possessed crack cocaine with the intent to distribute. *See United States v. Johnson*, 302 F.3d 139, 149 (3d Cir.2002) (citing 21 U.S.C. § 841(a)(1)). The evi-

---

4. Appellants were also acquitted of numerous counts. *See supra* note 1 and accompanying text.

dence presented against Joseph included the following: (1) testimony by cooperating government witnesses Rogers and Baez; (2) testimony by investigating agents; and (3) circumstantial evidence, including wiretaps, demonstrating Joseph's various purchases of crack cocaine with the intent to distribute.

On appeal, Joseph contends Rogers' testimony was insufficient to support the conviction because Rogers provided inconsistent testimony with respect to whether he sold crack cocaine exclusively and contradicted himself both with respect to the frequency with which, and the quantity of crack cocaine, he sold to Joseph. Joseph asserts Rogers' testimony that he sold crack cocaine exclusively is "wrought with implausibility" because Rogers acknowledged selling marijuana "once or twice" to one customer[5] during the time period at issue and because Rogers had "numerous convictions for selling marijuana" in previous years. Additionally, Joseph maintains Rogers' testimony regarding when and how much crack cocaine he sold to Joseph conflicted with statements he made before the trial.

There is "no need for this Court to reconcile the inconsistencies, because they relate to witness credibility, an area peculiarly within the jury's domain." *Cothran,* 286 F.3d at 176 (citation and internal quotation marks omitted). We need only examine the trial record to establish there is minimum evidentiary support for a credibility determination, and we presume the jury resolved any conflicting inferences "in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown,* —— U.S. ——, 130 S.Ct. 665, 673, 175 L.Ed.2d 582 (2010) (citation and internal quotation marks omitted). Rogers testified that during the identified period he only sold crack cocaine, his relationship with Joseph was not social but was limited to the sale of crack cocaine, and Joseph was a regular customer. Baez provided similar testimony, and Clifford Fiedler, a Special Agent with the Federal Bureau of Investigation who participated in the investigation of Rogers, testified Rogers purchased marijuana for personal use and was, to his knowledge, not selling marijuana. There was more than sufficient evidence upon which the jury could rely to convict Joseph, and we defer to the jury's assessment of Rogers' testimonial credibility as the testimony was not so unbelievable or inconsistent a rational juror could not deem it credible.[6]

Joseph further asserts that circumstantial evidence resulting from the search of his home as well as Baez's testimony concerning deliveries to Joseph "fails to corroborate or cure Rogers' testimony." Joseph argues the "consent search of [a]ppellant's home yielded no crack or items consistent with its manufacturing

---

**5.** Rogers acknowledged selling marijuana to Michael Clarence Curry, a fugitive from justice at the time of trial. He denied having sold marijuana to Joseph or the other co-defendants.

**6.** Joseph also maintains Rogers is "unworthy of belief," and "lack[s] the capacity for reason that is necessary for a jury to rely on," because, among other things, Rogers filed allegations accusing the District Court and Assistant United States Attorney of criminal behavior and threatened to file criminal charges against them. Further, Joseph asserts the credibility of his testimony "that his dealings with Rogers were limited to marijuana" is enhanced because it is "consistent with Agent Fielder's extensive testimony referencing Rogers' involvement in marijuana trafficking." But Fielder, as previously discussed, testified Rogers purchased marijuana for personal use and was not selling marijuana. In any event, for the reasons identified, these claims are unpersuasive, and we will not disturb the jury's assessment of the witnesses' credibility, including Joseph's.

or sale, but a blunt used to smoke marijuana, consistent with [a]ppellant's testimony[,]" and Baez "never witnessed a narcotics transaction take place between Rogers and [a]ppellant." [7]

The government's proof may take the form of circumstantial as well as direct evidence. *United States v. Johnson,* 302 F.3d 139, 149 (3d Cir.2002). The evidence presented, in addition to that already discussed,[8] included telephone records establishing 788 contacts over a period of several months between Rogers' phone and Joseph's phone, and numerous wiretapped telephone conversations of certain of these contacts including recordings from October 20, 2007, and October 26, 2007, in which Rogers and Joseph arranged deliveries and amounts for those days and addressed resale.[9] Rogers testified Joseph purchased two "eightballs"[10] of crack cocaine on each date; the prosecution presented evidence that purchases in these quantities is consistent with the intent to repackage for resale and distribute crack cocaine. Rogers was videotaped arriving at Joseph's residence on each occasion. Moreover, although Baez did not testify as to having directly witnessed an actual transaction, she testified she: assisted Rogers in the sale of only crack cocaine, not marijuana, and to her knowledge Rogers never sold marijuana in Easton, although he had before they moved to Easton from New York in 2004; received and transferred phone calls from Joseph to Rogers; waited in the car on approximately twelve occasions while Rogers made deliveries inside Joseph's home; and

further testified she and Rogers had only a business, not social, relationship with Joseph.

Even if we do not consider the items found during the search of Joseph's residence on March 12, 2008, the day of his arrest, a reasonable jury could infer from the evidence presented that Joseph possessed crack cocaine with the intent to distribute on October 20, 2007, and October 26, 2007. We conclude the evidence, viewed in the light most favorable to the prosecution, was sufficient to support Joseph's convictions. It is immaterial that the evidence may also permit a "less sinister conclusion. . . ." *Dent,* 149 F.3d at 188. "To sustain the jury's verdict, the evidence does not need to be inconsistent with every conclusion save that of guilt." *Id.* (citation and internal quotation marks omitted). Accordingly, because we find the jury's verdict to be supported by sufficient evidence, we hold the District Court properly denied Joseph's motion for acquittal.

## IV.

█ On appeal, Rivera argues only the evidence was insufficient to support his conviction because the government submitted no scientific evidence or expert testimony that the substance Rivera possessed on October 19, 2007, was actually crack cocaine. Rivera maintains the government was required to adduce evidence establishing the "chemical composition of the substance" but failed to "call a chemist or any other witness that tested the purported cocaine."

---

7. Joseph testified he only purchased marijuana from Rogers for personal use.

8. We have held that even "uncorroborated accomplice testimony may constitutionally provide the exclusive basis for a criminal conviction." *United States v. De Larosa,* 450 F.2d 1057, 1060 (3d Cir.1971).

9. Rogers testified he had never seen Joseph smoke crack cocaine and Joseph testified he did not purchase crack cocaine for personal use.

10. One "eightball" is one-eighth of an ounce, or 3.5 grams, of crack cocaine.

"So long as the government produces sufficient evidence, direct or circumstantial, from which the jury is able to identify the substance beyond a reasonable doubt, the lack of scientific evidence is not objectionable." *Griffin v. Spratt*, 969 F.2d 16, 22 n. 2 (3d Cir.1992) (quoting *United States v. Schrock*, 855 F.2d 327, 334 (6th Cir.1988)). "Such evidence can include lay experience based on familiarity through prior use, trading, or law enforcement; a high sales price; on-the-scene remarks by a conspirator identifying the substance as a drug; and behavior characteristic of sales and use such as testing, weighing, cutting and peculiar ingestion." *United States v. Harrell*, 737 F.2d 971, 978 (11th Cir.1984). The evidence presented against Rivera was substantially similar to that presented against Joseph, and included Rogers' testimony that his relationship with Rivera was limited to the sale of eightballs of crack cocaine and that Rivera was a regular customer of eightball quantities of crack cocaine. Baez testified she accompanied Rogers on a number of occasions on which he sold eightballs of crack cocaine to Rivera, and Oliver Sims, an Easton drug dealer, testified to having purchased eightballs of crack cocaine from Rivera for a one-month period. Telephone records established more than 1,100 contacts over a period of several months between Rogers' phone and Rivera's phone. A number of these contacts were wiretapped, including recorded telephone conversations from October 19, 2007, the date of the offense charged in the count of conviction. On this date, Rivera and Rogers agreed to rendezvous "by the blinking light on Center Street in Easton," and spoke six times between 6:10 P.M. and 6:48 P.M. In one call, Rivera said "I want three all together." Rogers testified this referred to three eightballs—10.5 grams—of crack cocaine, which he then sold to Rivera. Crediting all inferences in favor of the government, we conclude the government produced sufficient cumulative circumstantial evidence demonstrating the identity of the substance for a reasonable jury to convict Rivera of possession with intent to distribute five or more grams of crack cocaine on October 19, 2007.

## V.

For the foregoing reasons, we will affirm the judgments of conviction and sentence.