NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-2684 & 09-3862
_____

UNITED STATES OF AMERICA

v.

DORIAN RAWLINSON,
                    Appellant at No. 09-2684

KASEEN DOBSON,
                    Appellant at No. 09-3862
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal Nos. 08-cr-00134-002 & 08-cr-00134-003
(Honorable James Knoll Gardner)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 7, 2011
Before:  SCIRICA, AMBRO and VANASKIE, *Circuit Judges*.

(Filed May 27, 2011)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Following a jury trial, Kaseen Dobson was convicted of conspiracy to distribute

fifty grams or more of cocaine base ("crack"), 21 U.S.C. § 846, conspiracy to possess a

firearm in furtherance of a drug trafficking crime, 21 U.S.C. § 924(o), possession with

intent to distribute crack, 21 U.S.C. § 841(a)(1), use of a communication facility to facilitate the possession of crack, 21 U.S.C § 843(b), and possession of a firearm in furtherance of a drug trafficking crime. 18 U.S.C. § 924(c). Dobson was sentenced to 300 months' imprisonment, ten years of supervised release, a $5,000 fine, and a $900 special assessment.

At the same trial, the jury convicted Dorian Rawlinson of conspiracy to distribute more than five grams of crack, 21 U.S.C. § 846, possession of crack with intent to distribute, 21 U.S.C. § 841(a)(1) and 21 § 841(b)(1)(B), and use of a communication facility to facilitate the possession of crack. 21 U.S.C. § 843(b). Rawlinson was sentenced to a term of 180 months' imprisonment, eight years of supervised release, a $5,000 fine, and a $600 special assessment. Rawlinson and Dobson appeal their judgments of conviction and sentence. We will affirm.[1]

I.

Sean Rogers was the target of an FBI investigation into the large scale distribution of crack in the Easton, Pennsylvania area.[2] In the course of his drug trafficking operation, Rogers typically took orders for and delivered to customers approximately one-eighth of an ounce to one ounce of crack cocaine for resale in smaller amounts. In October and November 2007, the FBI began monitoring a court-ordered wiretap on Rogers's telephone. During the course of the wiretap investigation, the FBI intercepted

---

[1] We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).
[2] The investigation of Sean Rogers lead to a series of indictments and prosecutions. For additional exposition of the facts of the Rogers investigation, *see United States v. Rivera*, --- Fed. App'x ----, 2011 WL 213481 (3d Cir. Jan. 25, 2011).

drug-dealing conversations between Rogers and Rawlinson and Dobson and between Rogers and Ralick Cole, who was also charged in the same indictment. Cole pleaded guilty and testified against Rawlinson and Dobson at their trial.

As noted, several intercepted telephone conversations detailed arrangements for Rogers's crack sales to Dobson. On five separate occasions in January 2008, Dobson sold crack to an undercover Phillipsburg police officer. On one specific occasion, January 30, 2008, after Cole drove Dobson to make a sale of crack to an undercover officer, Phillipsburg police stopped the vehicle. Upon exiting the car, Dobson dropped a loaded .32 caliber handgun on the street shortly before Phillipsburg police arrested him.

Cole and Rawlinson were arrested on March 13, 2008, at a residence in Allentown, Pennsylvania. Agents found a shotgun belonging to Cole. Among other things, agents found a cigarette pack containing a plastic bag with 2.5 grams of crack in Rawlinson's bedroom.

At trial, Cole testified he and Dobson had moved from Brooklyn, New York to Easton, Pennsylvania to sell crack cocaine in a more promising market. Cole also testified he and Dobson purchased redistribution amounts of crack from Rogers several times a week; either he or Dobson called Rogers to place an order and they would travel together to complete the purchase. Rogers's common law wife, Anna Baez, testified that Dobson and Cole placed and picked up orders from Rogers. Often she was present for the drug transactions. Cole testified he and Rawlinson purchased crack from Rogers several times a week. Either he or Rawlinson placed the order with Rogers and they travelled together to complete the purchase.

3

At trial, the government presented DEA Agent Dionysios Mihalopoulos, an expert in narcotics trafficking. Mihalopoulos opined that the crack found in Rawlinson's bedroom was consistent with distribution, not with personal use. Both defendants moved for a judgment of acquittal under Fed. R. Crim. P. 29 on all counts, arguing the evidence was insufficient to support conviction. After the motions were denied, defendants presented their case. They renewed their Rule 29 motions, which were also denied.

The District Court sentenced Dobson to the mandatory minimum of twenty years' imprisonment for the 21 U.S.C. § 846(b)(1)(iii) drug conspiracy conviction, and a consecutive mandatory minimum five-year term for a conviction under18 U.S.C. §924(c)(1). The court sentenced Rawlingson to 180 months' imprisonment, based on his classification as a career offender under U.S.S.G. § 4B1.1, a base offense level of 37, a criminal history category of VI, and a guideline range of 360 months to life.

## II.

Rawlinson and Dobson challenge their convictions, contending the evidence at trial was insufficient to prove they entered into an agreement to distribute crack as required under 21 U.S.C. § 846.[3]

With respect to the conspiracy convictions, "we must determine if the evidence at trial would have allowed a reasonable juror to conclude beyond a reasonable doubt that

---

[3] We apply a deferential standard of review to a challenge of insufficient evidence to sustain a jury's verdict. *United States v. Quiles*, 618 F.3d 383, 395 (3d. Cir. 2010) (citing *United States v. Dent*, 149 F. 3d 180, 187 (3d Cir. 1998)). The jury's verdict will be sustained unless, viewing the evidence in the light most favorable to the government, we determine that no rational trier of fact could have found the presence of the essential

the defendants 'shared a unity of purpose, [or] the intent to achieve a common goal and an agreement to work together toward the goal.'" *United States v. Applewhaite,* 195 F.3d 679, 684 (3d Cir. 1999) (quoting *United States v. Wexler*, 838 F.2d 88, 90-91 (3d Cir.1988)) (alteration in original). The government may prove these elements entirely by circumstantial evidence. *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999).

## A.

Dobson contends the only evidence of conspiracy presented against him was the testimony of Baez and Cole, who were unreliable because their testimony was given in exchange for leniency. But witness credibility is for the jury. *United States v. Jones*, 566 F.3d 353, 361 (3d Cir. 2009). Baez and Cole's testimony was not so unbelievable or inconsistent such that no rational juror could deem it credible.

Cole testified he and Dobson moved to the area together to make more money selling crack. Cole testified he drove Dobson to the drug transaction on January 30, 2008. Baez testified that Dobson and Cole often purchased crack together. This pattern of conduct is indicative of a unity of purpose, agreement, and understanding between Cole and Dobson. Additionally, the testimony of Dobson's repeated crack purchases sufficiently proved several overt acts in furtherance of the conspiracy. *United States v. McKee*, 506 F.3d 225, 243 (3d Cir. 2007) (defining an overt act as "any act performed by any conspirator for the purpose of accomplishing the objectives of the conspiracy").

---

elements of the crime beyond a reasonable doubt. *Quiles,* 618 F.3d at 395. "We do not re-weigh the evidence or assess the credibility of witnesses." *Id.* (internal citations omitted).

Viewing the evidence in the light most favorable to the government, it is clear the evidence was sufficient to sustain Dobson's conviction for conspiracy.

## B.

Rawlinson also contends there was insufficient evidence to prove he and Cole engaged in a conspiracy to distribute crack. Rawlinson maintains he and Cole were independent, each buying drugs from Rogers with his own money, despite the fact they were present together at the drug buys. The record belies these assertions.

The wiretap conversations revealed at least one occasion in which Rawlinson and Cole shared a telephone to arrange a drug transaction with Rogers. On another occasion, Rawlinson used Cole's car to facilitate a drug transaction with Rogers. More significantly, testimony at trial demonstrated Rawlinson and Cole often placed crack orders together and travelled to the drug transactions together. From this course of conduct, there was sufficient evidence of a unity of purpose, agreement, and understanding indicative of a conspiracy, *see Gibbs,* 190 F. 3d at 197, and sufficient evidence of multiple overt acts in furtherance of the conspiracy, *see McKee*, 506 F.3d at 243.

## C.

Dobson contends the court erred in denying his motion for judgment of acquittal for possession of a firearm in furtherance of a drug trafficking crime. To prove the elements of this crime, "the government must show that the defendant possessed the firearm to 'advance or promote criminal activity.'" *United States v. Iglesias,* 535 F.3d 150, 157 (3d Cir. 2008) (quoting *United States v. Bobb*, 471 F.3d 491, 496 (3d Cir.

6

2006)). Some of the relevant factors are: "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004) (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000)).

Testimony at trial demonstrated that Dobson possessed a loaded handgun while making a drug transaction. The possession of the handgun during a drug transaction, the fact that it was loaded, and the handgun's proximity and accessibility to Dobson, all demonstrate that the weapon was more than merely present during a drug crime. A jury could rationally conclude that the handgun was being employed for protective purposes, and possessed in furtherance of a drug trafficking crime. The motion for judgment of acquittal was properly denied.

III.

Rawlinson challenges his conviction for three counts of possession with intent to distribute crack, contending the government's questioning of expert Special Agent Mihalopoulos resulted in a breach of Fed. R. Evid. 704(b), by eliciting an inadmissible opinion on the ultimate issue of fact. As Rawlinson failed to object to Mihalopoulos's testimony at trial, we review for plain error. *United States v. Christie,* 624 F.3d 558, 567 (3d Cir. 2010).

"It is settled law that an expert may testify about common behavior patterns in a profession or subculture." *Price v. United States,* 458 F.3d 202, 212 (3d Cir. 2006). But

7

Fed. R. Evid. 704(b) prohibits the expert from testifying as to a defendant's mental state. *United States v. Watson,* 260 F.3d 301, 309 (3d Cir. 2001). Mihalopolous was not asked to, and did not, testify about Rawlinson's mental state. He opined about whether the facts presented were more consistent with the general practices of drug dealers than the practices of drug users. Mihalopolous did not impermissibly draw the ultimate inference or conclusion for the jury. *Watson,* 260 F.3d at 309. There is no error, let alone plain error.[4]

## IV.

Dobson challenges the imposition of a consecutive five-year mandatory minimum sentence for the firearm offense under 18 U.S.C. § 924(c). He contends the prefatory language in 18 U.S.C. § 924(c)(1)(A) mandates a sentence concurrent to the greater twenty-year mandatory minimum sentence.[5] We disagree.

"[T]he most cogent interpretation is that the prefatory clause refers only to other minimum sentences that may be imposed for violations of § 924(c), not separate offenses." *United States v. Abbott,* 574 F.3d 203, 208 (3d Cir. 2009). Dobson's conviction for possession with intent to distribute crack cocaine was a separate offense. "[A] sentence imposed for a predicate offense cannot supplant or abrogate the minimum

---

[4] Because Rawlinson's conviction for possession with intent to distribute will be affirmed, his conviction for use of a communication facility to facilitate the possession of crack in violation of 21 U.S.C. § 843(b) will be affirmed.

[5] The prefatory clause of § 924(c) reads, "*Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law*, any person who . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . .*" 18 U.S.C. § 924(c)(1)(A) (emphasis added).

sentence specified for a violation of § 924(c)." *Id* at 209. Possession with intent to distribute crack is a predicate offense for possession of a firearm in furtherance of drug trafficking, and therefore a sentence for the drug distribution offense will not supplant the minimum sentence for the firearm offense. The District Court correctly imposed a five-year mandatory minimum sentence under § 924(c) consecutive to Dobson's twenty-year mandatory minimum sentence under 21 U.S.C. § 841.

V.

Rawlinson and Dobson both contend the sentencing structure for crack offenses as applied to them violated their rights to due process and equal protection under the law. They argue the 100:1 crack to powder ratio used for the statutory mandatory minimums and guidelines in effect at the time of their sentencing violated their equal protection rights because of the ratio's disparate impact on racial minority groups.[6]

"[T]here is no evidence whatsoever that suggests that the distinction drawn between cocaine base and cocaine was motivated by any racial animus or discriminatory intent on the part of either Congress or the Sentencing Commission." *United States v. Frazier*, 981 F. 2d 92, 95 (3d Cir. 1992). The distinctions between crack and powder

---

[6] Defendants cite to the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010), as a basis for vacating their sentences. While the Fair Sentencing Act reduced the 100:1 crack to powder ratio to approximately 18:1, it provides defendants with no relief. Defendants' crimes occurred before its effective date, and Congress did not provide for its retroactive application. "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide. . . ." 1 U.S.C. § 109. The mandatory minimum sentences for crack violations in effect before the enactment of the Fair Sentencing Act apply to the defendants who committed their crimes while the prior law was in force. *See United States v. Reevey*, 631 F.3d 110, 114-15 (3d Cir. 2010).

cocaine in 21 U.S.C. § 841 and the guidelines in effect at the time of sentencing were not unconstitutional.[7] *See id.* Defendants' sentences did not violate their rights to equal protection and due process.

## VI.

For the foregoing reasons, we will affirm the judgments of conviction and sentence.

---

[7] The guidelines have since been amended reducing the ratio from 100:1. Congress has provided a mechanism for a limited resentencing "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. 3582(c)(2); *see also Dillon v. United States*, --- U.S. ----, 130 S. Ct. 2683, 2692 (2010) (calling the provision "a narrow exception to the rule of finality"). Section 3582(c)(2) and the policy statement in U.S.S.G. § 1B1.10 provide the mechanism and restrictions for applying subsequently lowered guidelines.